**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

SECURITIES AND EXCHANGE COMMISSION, )
)
Plaintiff, )
)
VS. ) **NO. C 20-04188 RS**
)
NAC FOUNDATION, LLC and ROWLAND MARCUS ANDRADE, )
)
Defendants. )
)

San Francisco, California
Thursday, January 7, 2021

**TRANSCRIPT OF REMOTE VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES**: (Appearances via Zoom video conference.)

For Plaintiff:
U.S. SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street - Suite 2600
San Francisco, California 94104
**BY: MARC DAVID KATZ**
**JOHN KY HAN**
**ATTORNEYS AT LAW**

For Defendants:
MURPHY AND MCGONIGLE
1185 Avenue of the Americas
12th Floor
New York, New York 10036
**BY: KATHERINE D. COOPER**
**ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By: Ruth Levine Ekhaus, RMR, RDR, FCRR
Official Reporter, CSR No. 12219

**APPEARANCES: (CONTINUED)**

For Defendants:

MURPHY AND MCGONIGLE
1001 G Street - 7th Floor
Washington, D.C. 20001

**BY: LIONEL ANDRE**
**ATTORNEY AT LAW**

Thursday, January 7, 2021 1:33 p.m.

P R O C E E D I N G S

---o0o---

**THE CLERK:** Calling Case 20-cv-4188, SEC versus NAC Foundation.

Counsel, please state your appearances.

**MR. KATZ:** Good afternoon, Your Honor. Marc Katz for the plaintiff, SEC.

**THE COURT:** Good afternoon.

**MR. HAN:** Good afternoon, Your Honor. John Han for the SEC.

**THE COURT:** Good afternoon.

**MR. ANDRE:** Good afternoon, Your Honor. Lionel Andre for Rowland Marcus Andrade.

**THE COURT:** Good afternoon. Okay.

So this matter is on for defendants' motion to dismiss the complaint. I have reviewed what the parties submitted, and let me give you my tentative view regarding where things stand.

I am inclined to deny the motion. I think defendants' principal argument is that there is no securities law violation that could have occurred here, as there was no unregistered sale of a security, I don't think that is an issue that's appropriately determined on a motion to dismiss.

And I think the defendants' argument relies in part on

incorporating the terms and conditions they want me to either incorporate or consider by way of judicial notice. I think, if you look at the *Khoja* decision in our circuit, Judge Tashima did a wonderful job of clarifying judicial notice and incorporation by reference and, frankly, pointed out the overuse of those concepts. And I don't think the terms and conditions here are appropriately subject of consideration on a motion to dismiss.

So that's my tentative view. Seeing that that is the case, let me ask the defendants to go ahead and go first.

**MS. COOPER:** Sure, Your Honor. This is Katherine Cooper. My connection had failed when people were making their appearances. But this is Katherine Cooper, Murphy McGonigle, on behalf of NAC Foundation and Mr. Andrade.

Thank you for sharing your thoughts with us.

I guess what I would say is that, you know, a complaint has to stand on its own legs. It has to state alleged facts it has to allege facts that are consistent with the documents that the complaint relies on.

And the complaint relies on the white paper. It references the white paper 11 times. It also references --

**THE COURT:** But it does it -- by referencing it, it doesn't buy into the notion that everything in there is the truth.

**MS. COOPER:** Absolutely not. You're right.

**THE COURT:** Right.

**MS. COOPER:** I absolutely agree with you, Your Honor. But what is at issue is what the offer was. And under Ninth Circuit law, it is everything that the promoters of a product said to a buyer. And so part of the things that they said is in the white paper. It's also in the terms and conditions; which were also on the website, that the complaint references seven times. But --

**THE COURT:** But, of course, there is going to be potentially dispute about the meaning of what some of those things are. So it isn't -- judicial notice and/or incorporation by reference is a device that's used when there is something -- it's a matter that's not subject to dispute. Or it's, for example, that on a certain date something was issued. Not the contents of the material, but that it was issued on that date. And everyone -- we can take that as a given, for judicial notice.

Here you're -- the terms and conditions, you may well be right that it should be interpreted the way you want it interpreted, but on a motion to dismiss, it is -- it's not appropriate to simply say: Well, there it is. That's what one side says and therefore we're going to -- I'm going to take judicial notice of it.

**MS. COOPER:** Your Honor, I guess what I would say is that the -- without looking at the terms and conditions and

without taking into account what the white paper says, the other the allegations in the complaint about what the offer was are general, vague, and conclusory. They don't stand on their own without relying on the white paper.

**THE COURT:** Is this a Rule 8 analysis or a 9(b) analysis? How should I view this complaint?

**MS. COOPER:** Well, I think I'm referencing, you know, the *Iqbal* and --

**THE COURT:** Right. So it's Rule 8, *Iqbal/Twombly* is the rubric through which I need to analyze this.

**MS. COOPER:** Right. I agree.

**THE COURT:** Okay. And -- go ahead. Go ahead.

**MS. COOPER:** And so, when you look at the complaint, what's alleged are threadbare claims of the elements of what is a security under *Howey*. It's a very conclusory allegation that there was a common enterprise. There is a very conclusory allegation that the buyers expected to profit. There is a very conclusory allegation that they expected to profit by the entrepreneurial efforts of others.

**THE COURT:** Well, you're in no -- there is no mystery for you as to what the SEC contends is the nature of the factual -- the scenario here that causes them to say this is a security. You may well prevail on it. You may, at summary judgment or later in the case, be able to prevail on it.

But the concern that's reflected in *Twombly* and *Iqbal* that

you get fair notice of what it is that they are claiming in this instance constitutes the sale of an unregistered security, you're not in this the dark on that. You know exactly what they say is the basis for their conclusion.

And you can go and do battle on that down the line, but on a motion to dismiss to say they can't even proceed is a tall order.

**MS. COOPER:** It is, Your Honor. But here, I don't know, they don't tell us how they are going to prove that there was a common enterprise.

**THE COURT:** Do they have to in a complaint? How they are going to prove it?

**MS. COOPER:** Well, they have to provide some specific facts. I mean, I don't know how they are going to even come at us and try to prove that there was a common enterprise. They don't even say there was a pool --

**THE COURT:** Then you can bring a pretty quick summary judgment motion. But, you know, how they are going to go about proving it is not something that ordinarily needs to be set forth in the complaint.

The complaint isn't the roadmap of how the case is going to be presented for the trier of fact.

What it is is: This is what we're alleging happened here.

And here they are alleging that there was sale of unregistered securities and they are not keeping you in the

dark as to what they point to that constitutes such a sale. And, you know, as I say, you're going to have an opportunity to, you know, go after that hammer and tong, but this is not the point to do it, in my view. So . . .

**MS. COOPER:** Thank you, Your Honor.

**THE COURT:** Okay. Let me hear from -- is it Mr. Han or Mr. Katz?

**MR. KATZ:** Good afternoon, again, Your Honor. Marc Katz.

**THE COURT:** Good afternoon.

**MR. KATZ:** I don't have much have to say given the preliminary discussion --

**THE COURT:** Why don't you address for me Ms. Cooper's comments about -- you know, I pushed back with her that the terms and conditions are not appropriate for me to consider at this juncture. But you do talk about the white paper quite a bit. So there is no doubt that that's front and center in this litigation.

So why shouldn't I be able to take a look? And I've got it in front of me. Why is she wrong?

**MR. KATZ:** We think the Court's analysis -- it's a very narrow analysis in terms of the incorporation by reference on the terms and conditions. And, again, I think it's important -- so we think we're right on the test, that it isn't -- wasn't relied on in the complaint, wasn't mentioned

extensively, and isn't integral to the claims that we put forth.

And in terms -- I want to bring up that where we are, again, in the procedure. We just need to make sufficient allegations under *Howey*. We believe we have gone well past that. But, even if the Court were to look at it, it doesn't make a difference for purposes of this motion to dismiss, again, given where we are and the allegations that have been alleged here.

And given the -- *Howey* and its progeny's emphasis on economic reality, and that labels and disclaimers don't matter, in some ways that was the gist of our brief. And it seems like defendants, instead of offering a motion to dismiss, are trying to bring up a material issue of fact as if we were bringing a motion for summary judgment. That's what it appears.

That's not appropriate here. In some ways they are asking the Court, as a matter of law, to rule this is not a security at this time.

And, again, we think -- we also disagree strongly with the concept that we just had threadbare allegations of elements. I would like to point the Court, for example, to --

**THE COURT:** Before you do that. Excuse me. Let me --

**MR. KATZ:** Sure.

**THE COURT:** Let me ask you: Ultimately, are there going to be disputed issues of fact in this, or aren't they

right that it really is a legal question on whether or not there is -- I mean, do you anticipate that we will have factual disputes or will it be these are either securities or they are not under applicable law?

**MR. KATZ:** I believe, they will be either securities or they are not. And I believe that even if we bring in these terms and conditions down the line in a summary judgment, it won't matter. But I think that's the appropriate place for it.

So I envision --

**THE COURT:** So you don't think there is -- we're going to find -- we're not going to come to the point in this case where it really is going to be a factual question, really at the end of the day.

**MR. KATZ:** I think there could be facts related to what -- the terms and conditions; how many versions were out there; what did purchasers do with it or not do with it; what was there -- that might be out there, but I don't think it's going to be dispositive when we get down the line on that.

Again, as in the *Kik* case -- we cited that a bunch in our brief. That case was a summary judgment case. And *Telegram*, which was a preliminary junction case, also there were disclaimers in their discussions about that. So I think they may be at play, but it's going to be a legal analysis under *Howey*, given everything.

May I turn to the issue of the factual allegations?

**THE COURT:** Go ahead.

**MR. KATZ:** I just want to point the Court defendants say repeatedly, I think, in their reply: Hey. These are just threadbare allegations.

And we respectfully disagree. We think there is quite detailed -- about all of the elements of the case, the factual allegations. And I'll point the Court, just for reference, to paragraphs 41 to 43 as examples. And I'll read just a couple of portions of that.

This is from Paragraph Number 41. (reading):

"In one of NAC's social media channels, company representatives highlighted the availability of secondary market trading to attract investors."

And it goes on.

In paragraph 43, again very specific (reading):

"NAC tied the value of ABTC tokens to purchasers' ability to quickly resell it to other investors, not to any immediate utility."

So we presented -- and we're talking about specific places and specific allegations and -- as well as issues about making these tradeable, taking steps to make sure they were on platforms, that they had no use. We believe all three elements of *Howey* are more than well-pleaded in these allegations.

**THE COURT:** Okay. Ms. Cooper, any further comments?

**MS. COOPER:** Sure. So the allegations of the

complaint are contradicted by the white paper and by the terms and conditions.

If you look at Exhibit 2, Bates stamp pages 214 and 218, the terms and conditions guarantee -- you know, make no guarantee, make clear that there is no guarantee that there is going to be a secondary market.

**THE COURT:** Now, let's assume, though, for purposes of discussion, as I indicated right at the beginning, I don't think the terms and conditions can be included in my consideration for purposes of a motion to dismiss.

So if you take those out, where do you -- does that mean the argument you've just presented to me is not available to you?

**MS. COOPER:** Well, I think you're saying it's not available. So if it's not available, it's not available.

But then -- can I point you, then, to the white paper?

**THE COURT:** Yes. Well --

**MS. COOPER:** You know --

**THE COURT:** -- the white paper for what purpose?

Again, are you saying that -- what are you asking me to do with the white paper? It's referred to. No doubt about it, it's referred to in the complaint. But then what do you think that means for purposes of how I look at it on a motion to dismiss?

**MS. COOPER:** Absolutely, Your Honor. I think we're on

the same page on this.

We're not offering the white paper for its -- for the truth of anything stated in it. But it is part of the -- you know, in the securities case law, it would be called, you know, the promotion.

And so it's what is the -- you know: What is the buyer's reasonable expectation based on everything that they were told? And that sums up Ninth Circuit law, more or less.

And if you look at Bates page -- Exhibit 1, Bates page 159, it explains that. And, again, I'm not saying this is true -- although, I think it is true, but you don't -- I agree the Court can't assume that anything in the white paper is true; so I'm with you on that, Your Honor.

What it does explain, though, is that there are pending patents that were filed in 2015 and 2016, that there was already an AML/KYC functionality to the predecessor token, the Aten Coin, which Mr. Andrade had previously produced. And it says that the AML bitcoin is -- the successor coin to the Aten Coin, would have certain additional features.

So I'm not saying you have to take this as true, because you shouldn't; I agree with you, Your Honor. But what I think this is -- why it's important is: Was is there a reasonable -- has the SEC alleged that there is a reasonable expectation of profit?

I would submit, Your Honor, no. Because, if you look at

this, there is not a lot more work to be done. The buyer has not been presented with: Hey. You'll buy my tokens and, in a couple of years, you know, we're all going to get rich, like *Kik* or like *Telegram*.

So I think this is very unique and very different.

**THE COURT:** The allegation, though, is that some of the tokens were held back by your clients; correct? So that the notion of --

**MS. COOPER:** Yes.

**THE COURT:** -- just, keying off of what you said "We'll all get rich," there is a joint prospect, if you will, on the increasing value, isn't there, alleged?

**MS. COOPER:** Possibly. But then, on the other hand, for vertical commonality, the developers only kept 10 million coins. They sold 76 million coins.

**THE COURT:** Right.

**MS. COOPER:** So -- and they weren't tied to selling them at any particular price. You know, the lowest price they sold the coins at was 35 cents.

Look. I'm just talking about what's in the complaint. The complaint alleges the lowest price was 35 cents. The defendants could have gone out and sold their 10 million coins for 25 cents and ran down the price; and they would be winners but all the buyers would be losers if the market price fell to 25 cents.

So, you know, just because you can, in a conclusory fashion, say: Hey. Look. Defendants kept a bunch of coins, therefore it's vertical commonality.

Well, it's just not true. It's not true based on what they have alleged in the complaint.

**MR. KATZ:** May I briefly respond, Your Honor?

**THE COURT:** Yes, go ahead.

**MR. KATZ:** Thank you.

The point about the patents, I think, is only material on our fraud allegations. The patent piece goes to whether our fraud allegations are proved that say: No. You lied to the investors. You said you had all this stuff. It was ready to go. And it wasn't.

So defendants can say: Oh, we're at the end-stage.

That's not what our complaint says. Our complaint says, it was a nascent stage. And, in fact, with the other -- with the other defendant in another case, Mr. Abramov, that they said: Look. We have nothing.

We have that explicitly in our complaint.

So that's on the fraud piece, and that's not even challenged the motion to dismiss.

In terms of vertical commonality, under *Telegram* there wasn't some threshold that said how many coins you had to keep. The point of vertical commonality is the interests of the buyers tied to the interests of the promoters.

And here that's threaded throughout our complaint. There is the issue of, yes, of 200 million coins, 76 were to the public, and they explicitly keep 10, according to the white paper. There is another 50 million that looks like it goes to Mr. Andrade; it's not quite clear. But of 200 million they sold 76. So they have a chunk. Whatever that chunk is, that aligns them.

And even more importantly and profoundly, this whole pitch is: Get in on the ground floor, because as we rise, as we make this incredible new coin, you're going to go -- and the demand is going to increase, and we're all going to be in it together.

That's the essence of strict vertical commonality, just like in *Telegram*.

**THE COURT:** Okay. All right. Very well.

Well, I'll take the matter under submission and I'll go through it again, and get you folks an order.

**MR. KATZ:** Thank you very much, Your Honor.

**THE COURT:** Thank you.

Any final comments anyone needs?

(No response.)

**THE COURT:** Okay. Well, thank you very much.

(Proceedings adjourned at 1:54 p.m.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, January 23, 2021

Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court