Charles C. Morgan (pro hac vice)
ccmlegalfirm@yahoo.com
**CHARLES C. MORGAN LEGAL PRACTICE, LLC**
4151 Pelicans Nest Drive
Bonita Springs, FL 34134
Tel. 609-636-0544

Attorney for Defendant
ROWLAND MARCUS ANDRADE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NAC FOUNDATION, LLC, et al.,<br><br>Defendants. | Case No. 3:20-cv-04188-RS<br><br>**DEFENDANT ROWLAND MARCUS ANDRADE'S NOTICE OF MOTION AND MOTION FOR DISQUALIFICATION OF THE HONORABLE RICHARD SEEBORG PURSUANT TO 28 U.S.C. §§ 144 AND 455 AND CIVIL LOCAL RULE 3-14; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Affidavit of Rowland Marcus Andrade and Certificate of Good Faith of Counsel filed herewith<br><br>Hearing: On the papers (Civil L.R. 7-1(b)) or as set by the Court |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on a date and at a time to be set by the Court, or on the papers without oral argument pursuant to Civil Local Rule 7-1(b), Defendant Rowland Marcus Andrade will and hereby does move for an order (1) disqualifying the Honorable Richard Seeborg

from further proceedings in this action pursuant to 28 U.S.C. § 455(a) and (b)(1); or, in the alternative, (2) determining that the accompanying Affidavit of Rowland Marcus Andrade (the "Affidavit") is timely and legally sufficient under 28 U.S.C. § 144 and referring the request for disqualification to the Clerk for random assignment to another Judge of this Court pursuant to Civil Local Rule 3-14 for determination on the merits.

This motion is based on this Notice, the following Memorandum of Points and Authorities, the Affidavit, the Certificate of Good Faith of Counsel, the records of this action and of the related proceedings identified in the Affidavit, and such further argument as the Court may permit.

This action is stayed through October 12, 2026. ECF No. 58. The stay was entered to await resolution of the related criminal proceeding and does not address the assignment of the case; a motion directed to the identity of the tribunal, rather than to the merits, is properly presented during the stay so that it may be resolved before proceedings resume.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Rowland Marcus Andrade moves to disqualify the Honorable Richard Seeborg from further proceedings in this action. He does not do so because he was convicted in the related criminal case, or because rulings there went against him. He recognizes that adverse rulings, standing alone, do not establish bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The motion rests instead on two distinct grounds, each supported by specific, record-cited facts set out in the accompanying Affidavit.

*First*, this civil action will require adjudication of the same disputed facts as the criminal case: 1) what AML Bitcoin purchasers were told and what they understood they were buying; 2)

the role and credibility of the Government's principal cooperating witness, Jack Abramoff; and 3) the Government's handling of evidence concerning Abramoff's relationship with federal law enforcement. On those very questions, the Court has already announced conclusions from the bench in the criminal case, including that Andrade "lied to people about what the purchasers were buying," *United States v. Andrade*, No. 3:20-cr-00249-RS ("Crim."), Dkt. 718, Tr. 28:11–15, and has characterized Andrade's arguments concerning the Government's handling of classified and informant-related evidence as "tread[ing] woefully close to frivolousness." Crim. Dkt. 828 at 1.

A well-informed, thoughtful observer would perceive a significant risk that those conclusions will govern this case before its evidence is heard. *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008); *Clemens v. U.S. Dist. Court*, 428 F.3d 1175, 1178 (9th Cir. 2005). That prospective concern is the domain of 28 U.S.C. § 455(a), and it is the concern that led Judge Reinhardt, in the mandamus proceeding arising from the Rodney King prosecutions, to conclude that a judge who had "expressed firm conclusions regarding the factual issues that are critical to the outcome of [the] civil trial" was a judge whose "impartiality might reasonably be questioned." *King v. U.S. Dist. Court*, 16 F.3d 992, 998 (9th Cir. 1994) (Reinhardt, J., concurring).

*Second*, the Affidavit describes a sequence of events that, accepted as true as 28 U.S.C. § 144 requires, would lead a reasonable person to believe that the Court's disposition toward the Government in these related matters is not solely the product of the evidence. The sequence begins with the administrative reassignment of Andrade's related forfeiture case to this Court on June 30, 2020, the day before a hearing at which the Government faced possible sanctions for withholding documents. It continues through the Court's October 4, 2024, order stating that the defense had not explained its need for classified materials that the defense's *ex parte* submission had expressly identified. And it culminates in the Court's assumption, on October 28, 2025, of two additional

Abramoff-related prosecutions after it had ruled in 2023 that Andrade's case was not related to them. Whether those facts ultimately establish bias is not for this Court to decide. Section 144 and Civil Local Rule 3-14 commit that determination to another judge once the Affidavit is found timely and legally sufficient.

The stay of this action makes this the appropriate moment for that determination. No merits proceeding has occurred since January 2021, and none is scheduled. Resolving the question of the tribunal now costs nothing in judicial investment and secures an adjudication that neither party can later question on this ground.

## II. PROCEDURAL BACKGROUND

The Securities and Exchange Commission filed its Complaint on June 25, 2020, alleging that Andrade and NAC Foundation, LLC violated the federal securities laws in connection with the offering of AML Bitcoin. ECF No. 1. Three days earlier, on June 22, 2020, a grand jury in this District had returned an indictment against Andrade arising from the same conduct. Crim. Dkt. 1. Both matters were assigned to this Court. On June 30, 2020, the Executive Committee reassigned to this Court a civil forfeiture action against Andrade's property, *United States v. One Parcel of Real Estate Property*, No. 3:20-cv-02013 (N.D. Cal.) (the "Forfeiture Case"), and the newly filed prosecution of Jack Abramoff, No. 3:20-cr-00260, "given their relationship" to the Criminal Case and this action. Forfeiture Case, Dkt. 40; Affidavit ("Aff.") ¶ 10 .

On January 20, 2021, the Court issued an order in this action addressing the sufficiency of the Complaint, in which it described the AML Bitcoin White Paper as disclosing that ICO participants would receive stand-in "ABTC tokens" exchangeable one-for-one for AML Bitcoin upon completion of its blockchain. ECF No. 26.

On January 21, 2021, on the parties' stipulation, the Court vacated all deadlines, stayed all proceedings including discovery, and directed the parties to request a status hearing within 30 days after resolution of the Criminal Case. ECF Nos. 28, 29.

On March 12, 2025, a jury found Andrade guilty of wire fraud and money laundering. Crim. Dkt. 615. The Court sentenced Andrade on July 29, 2025, to 84 months' imprisonment, and judgment was entered on July 31, 2025. Crim. Dkts. 717, 719. On September 16, 2025, the Court entered a forfeiture money judgment of $8,374,609 and ordered restitution of $2,203,920.29. Crim. Dkt. 740. Andrade's consolidated appeals are pending. *United States v. Andrade*, Nos. 25-5095, 25-6056, 25-6507 (9th Cir.).

In this action, the Court extended the stay on September 5, 2025 (ECF No. 47), November 12, 2025 (ECF No. 51), January 13, 2026 (ECF No. 53), April 14, 2026 (ECF No. 55), and, most recently, on July 27, 2026, through October 12, 2026, with a status report due by that date. ECF No. 58. Andrade self-surrendered to the Bureau of Prisons on January 9, 2026, and is serving his sentence at FMC Fort Worth. The April 13, 2026 status report advised the Court that Andrade's custodial status had impeded privileged communication with counsel; the SEC did not object to the resulting extension. As of this filing, no scheduling order, briefing schedule, or merits proceeding of any kind has been set in this action.

## III. LEGAL STANDARDS

### A. Section 144.

Section 144 provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall

proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. The affidavit "shall state the facts and the reasons for the belief that bias or prejudice exists," must be accompanied by a certificate of counsel of record that it is made in good faith, and a party may file only one such affidavit in any case. *Id.*

The challenged judge's role is confined to determining whether the affidavit is timely and legally sufficient. The judge may not pass on the truth of the facts alleged, which must be accepted as true, because "[t]o commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed." *Berger v. United States*, 255 U.S. 22, 36 (1921). "If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for recusal under section 144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for a determination of its merits." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980); *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978). This Court's Civil Local Rule 3-14 implements that procedure: where the judge "has determined not to recuse him or herself and found that the affidavit is neither legally insufficient nor interposed for delay, the Judge shall refer the request for disqualification to the Clerk for random assignment to another Judge."

An affidavit is legally sufficient if it "specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source." *Sibla*, 624 F.2d at 868. Conclusions, opinions, and dissatisfaction with rulings do not suffice. *Id.*

**B. Section 455.**

Section 455(a) requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," and § 455(b)(1) requires disqualification "[w]here

he has a personal bias or prejudice concerning a party." The § 455(a) inquiry is objective: "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Clemens*, 428 F.3d at 1178. The reasonable person is a "well-informed, thoughtful observer," not a "hypersensitive or unduly suspicious person," *id.*, and the question is "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Holland*, 519 F.3d at 913. The goal of § 455(a) "is to avoid even the appearance of partiality," which may exist "even though no actual partiality exists." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quoted in *Holland*, 519 F.3d at 913). Section 455(a) claims are "fact driven," and each must be resolved "by an independent examination of the unique facts and circumstances of the particular claim at issue." *Clemens*, 428 F.3d at 1178.

### C. *Liteky* and the "extrajudicial source" factor.

Under *Liteky*, the extrajudicial-source consideration applies to both §§ 144 and 455, but it is "a significant (and often determinative) 'extrajudicial source' *factor*" rather than a rigid doctrine. 510 U.S. at 554–55. Judicial rulings "alone almost never constitute a valid basis for a bias or partiality motion," and opinions formed during proceedings do not support recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555. At the same time, the Court expressly recognized that "predispositions developed during the course of a trial will sometimes (albeit rarely) suffice." *Id.* at 554. The Ninth Circuit likewise recognizes a "pervasive bias" exception where "a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *King*, 16 F.3d at 993 (quoting *United States v. Monaco*, 852 F.2d 1143, 1147 (9th Cir. 1988)).

### D. The two provisions are complementary.

A motion under § 144 "should also prompt the judge to whom the motion is directed to determine independently whether all the circumstances call for recusal under the self-enforcing provisions of section 455(a) & (b)(1)." *Sibla*, 624 F.2d at 868. And even if the judge declines to recuse under § 455, "the judge still must determine the legal sufficiency of the affidavit filed pursuant to section 144," and "[i]f that affidavit is sufficient on its face, the motion must be referred to another judge for a determination of its merits under section 144." *Id.*

## IV. ARGUMENT

### A. The Motion Is Timely.

Recusal motions under both sections "must be made in a timely fashion," and "should be filed with reasonable promptness after the ground for such a motion is ascertained." *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991). The requirement serves two purposes: to avoid wasting judicial resources on proceedings that would have to be redone, and to prevent litigants from holding a recusal motion in reserve until a ruling goes against them. *Id.* Neither purpose is implicated here, and the motion is timely for four reasons.

*First*, the ground for this motion is cumulative, and it was completed only within the past year. The Affidavit does not rest on any single event, and several of the events it describes would not, standing alone, have supported a motion. What supports the motion is the pattern, and the pattern was completed by events in 2025 and 2026. On February 3, 2025, former United States Treasury Agent Dr. Natalie "May" Edwards provided a declaration in support of Andrade's motion for an evidentiary hearing concerning government misconduct. Dr. Edwards confirmed that the government suppressed evidence concerning Russian diplomats and potential money laundering

by Jack Abramoff during 2017–2018, which falls within the period relevant to Andrade's indictment. (Crim. Dkt. 529 at 8, ¶¶ 4–6; Aff. ¶ 25).

On February 6, 2025, former defense counsel provided a sworn statement indicating that former FBI Special Agent Jonathan Buma could testify regarding Abramoff's operation of two pro-Russian and pro-Putin campaigns, as well as Abramoff's use of AML Bitcoin to facilitate international money laundering. (Crim. Dkt. 548-1 at 2, ¶ 4; Aff. ¶ 26).

On June 3, 2025, the sworn statement of former defense counsel that former FBI Special Agent Jonathan Buma confirmed Abramoff had been a Government informant, which gave new significance to the Court's October 2024 CIPA ruling (Crim. Dkt. 657-1 ¶ 9; Aff. ¶ 22). Then, on June 24, 2025, this Court declined to hear further argument on alleged Government misconduct and stated that Andrade had lied to purchasers (Crim. Dkt. 718; Aff. ¶¶ 38-39). On October 28, 2025, this Court assigned itself to two additional Abramoff-related prosecutions from Judge Donato after ruling in 2023 that Andrade's case was not related to them (Aff. ¶¶ 42–43). On March 11, 2026, this Court characterized Andrade's CIPA-related arguments as bordering on frivolous (Crim. Dkt. 828 at 1; Aff. ¶ 41). Under *Preston*, a motion is timely when filed with reasonable promptness after the ground is ascertained, even where the case was assigned long before. 923 F.2d at 733–35 (motion timely where filed promptly after counsel learned of the ground, notwithstanding eighteen months since assignment).

*Second*, this action has been stayed throughout. No judicial resources have been invested in merits proceedings since January 2021, no contested ruling has issued in this action since then, and no proceeding is scheduled. The motion therefore cannot be a reaction to an adverse ruling in

this case and granting it cannot waste any investment the Court has made in it. *Compare Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981) (per curiam) (motion untimely where withheld "until it was clear that the court intended to dismiss the underlying claim without leave to amend").

*Third*, Andrade has been in federal custody since January 9, 2026. The record of this action already reflects the resulting difficulty in privileged communication between Andrade and counsel, which the SEC did not dispute and the Court accommodated. A § 144 affidavit must be the party's own sworn statement of facts, and it is the only such affidavit he may file. Preparing it under those conditions, with the care the statute demands, is good cause for the interval between the most recent events and this filing. *See* 28 U.S.C. § 144 ("or good cause shall be shown").

*Fourth*, this is the earliest practical moment at which the question can be resolved before proceedings resume. The stay expires October 12, 2026, when the parties must report on the status of the case. Filing before that date ensures that the question of the tribunal is decided before any scheduling order, discovery, or motion practice, which is precisely what the timeliness requirement is designed to achieve.

Andrade acknowledges that the June 2020 reassignment, considered by itself, was known to him in 2020, and that he challenged it then by the means a petition for a writ of mandamus, which the Ninth Circuit denied under the stringent standard governing that extraordinary writ without reaching whether the reassignment complied with this Court's local rules. *In re Andrade*, No. 20-72001 (9th Cir. July 21, 2020) (order); Aff. ¶¶ 13-15. He does not assert the reassignment as an independent ground for disqualification. He includes it because § 144 requires "the facts and the reasons for the belief," and the reassignment is where the sequence the Affidavit describes begins. Its inclusion as context does not render untimely a motion whose operative grounds arose within the past year.

### B. The Affidavit Is Legally Sufficient Under § 144.

#### 1. The Affidavit states facts, not conclusions.

The Affidavit identifies dates, docket entries, transcript pages, and the content of specific orders and statements. It distinguishes facts within Andrade's personal knowledge from facts drawn from the record and identifies the record source for each. It does not rest on "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters." *Clemens*, 428 F.3d at 1178–79 (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)). Nor does it ask this Court to accept Andrade's characterization of any event. It asks the Court to accept the facts as alleged, as § 144 requires, and to leave their significance to another judge. *Berger*, 255 U.S. at 36.

#### 2. Accepted as true, the facts fairly support a belief in personal bias or favoritism.

The Affidavit attests to the following sequence of events:

*(a) The June 2020 reassignment.* On June 4, 2020, Judge Chhabria, presiding over the Forfeiture Case, directed the Government to make "a careful, responsible, and conservative assessment of what truly cannot be disclosed to Andrade," warned that "[i]f the Court determines that the government is reflexively and unnecessarily withholding documents from Andrade, it will consider sanctioning the lawyers and law enforcement entities involved," and set a hearing for July 1, 2020. Forfeiture Case, Dkt. 30; Aff. ¶¶ 9. On June 30, 2020, the day before that hearing, the Executive Committee reassigned the Forfeiture Case and the Abramoff prosecution to this Court. Forfeiture Case, Dkt. 40; Aff. ¶ 10 . The hearing on the Government's withholding of documents did not go forward before Judge Chhabria. Aff. ¶ 10-11.

*(b) The CIPA order.* In the Criminal Case, the defense submitted an *ex parte* declaration that identified, at paragraph 24, the FBI's informant file on Jack Abramoff, and explained why the defense contended the file was relevant and helpful. *United States v. Andrade*, No. 25-5095 (9th Cir.), Dkt. 23-2, Attachment A ¶ 24 & Attachment B at 5, 8; Aff. ¶¶ 18-19. The Court's October 4, 2024, order granting the Government's CIPA § 4 motion stated that the defense had not explained why it needed access to the protected materials. Crim. Dkt. 367 at 3:2–3; Aff. ¶¶ 20

*(c) Abramoff's informant status.* Abramoff testified at trial that he was not a Government informant. Trial Tr. 1788:18–19; Aff. ¶ 23. After trial, former defense counsel declared under penalty of perjury that counsel for former FBI Special Agent Buma had represented that Buma could confirm Abramoff had been an informant, and other defense declarations described instructions to agents to remove Abramoff-related information from an FBI Form 302 report. Crim. Dkt. 657-1 ¶ 9; Dkt. 498-3 ¶¶ 7–8, 33–41; Aff. ¶¶ 22 .

*(d) Restriction of Abramoff evidence, followed by denial of the multiple-conspiracy instruction for want of evidence.* The Court curtailed defense inquiry into Abramoff's activities independent of Andrade, stating, "this is not an area — you know this is not an area to go into," Crim. Dkt. 628, Trial Tr. 2283–84, and excluded or restricted related documentary evidence. Aff. ¶¶ 30–31. Immediately before deliberations, the Court denied the requested multiple-conspiracy instruction on the ground that sufficient evidence had not been presented, Crim. Dkt. 631, Tr. 2673–74, and later found no "spillover" between Andrade's conduct and Abramoff's. Crim. Dkt. 781 at 6; Aff. ¶¶ 33-36 .

*(e) Statements from the bench.* During trial, in the context of a Government objection to defense evidence, the Court advised the prosecution that it "ought to protect the record" even where it believed it had "just won" the point. Trial Tr. 2227; Aff. ¶ 37. At the June 24, 2025, hearing, the

Court declined to hear further argument concerning alleged Government misconduct and stated that Andrade had lied to purchasers about what they were buying. Crim. Dkt. 718, Tr. 28:11–15; Aff. ¶¶ 38–39.

*(f) The October 2025 reassignments.* On August 9, 2023, the Court ruled that the Criminal Case was not related to two prosecutions then pending before Judge Donato. Crim. Dkts. 199, 200; Aff. ¶ 42. On October 28, 2025, while serving as Chief Judge, the Court assumed both prosecutions from Judge Donato. No. 3:23-cr-00140-RS, Dkts. 65, 66; No. 3:22-cr-00171-RS, Dkts. 34, 35; Aff. ¶ 43.

No single item on this list would suffice, and Andrade does not contend otherwise. *Liteky* teaches that rulings "[i]n and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion)" almost never establish bias. 510 U.S. at 555. But the Affidavit does not present rulings in isolation. It presents (i) administrative actions that are not adjudicative rulings at all, and that in each instance placed Abramoff-related matters before this Court, including in 2020, on the eve of a hearing adverse to the Government, and in 2025, contrary to the Court's own prior related-case determination; (ii) an order that misdescribed what the defense had submitted on the single most consequential discovery question in the criminal case; (iii) orders that first prevented the defense from developing evidence and then faulted the defense for not having developed it; and (iv) statements from the bench that, accepted as true and read together, would lead a reasonable person to believe that the Court was attentive to protecting the Government's position and unwilling to hear challenges to the Government's conduct. That is the "surrounding comments or accompanying opinion" from which *Liteky* permits an inference of "deep-seated favoritism." Whether that inference should ultimately be drawn is a question for another judge. That it fairly *can* be drawn is all § 144 requires at this stage. *Sibla*, 624 F.2d at 867–68.

### C. Independently, § 455(a) Requires Disqualification From This Action.

Even apart from § 144, a well-informed observer would reasonably question whether the Court can adjudicate this civil action without regard to conclusions it has already announced. Section 455(a) asks "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Holland*, 519 F.3d at 913. Three features of this case create that risk.

*First*, the SEC's claims and the criminal charges arise from the same offering, the same disclosures, the same investors, and the same principal witnesses. The dispositive civil question of whether Andrade misrepresented what AML Bitcoin purchasers were acquiring is the very question on which the Court stated at the June 24, 2025, hearing that Andrade "lied to people about what the purchasers were buying" and that the purchasers "believed they were purchasing a complete product." Crim. Dkt. 718, Tr. 28:11–15; Aff. ¶ 39. The Court has also characterized as "tread[ing] woefully close to frivolousness" Andrade's arguments concerning the Government's handling of the Abramoff-related evidence that he intends to pursue in discovery here. Crim. Dkt. 828 at 1; Aff. ¶¶ 41, 45.

*Second*, *Liteky* and *King* identify this as the setting in which intrajudicial predispositions can require recusal. *Liteky* recognized that a judge who presides over a trial "may, upon completion of the evidence, be exceedingly ill disposed towards the defendant," and that such an opinion, "properly and necessarily acquired in the course of the proceedings," ordinarily does not disqualify the judge in that proceeding or a later one. 510 U.S. at 550–51. But the Court also held that intrajudicial predispositions "will sometimes (albeit rarely) suffice," *id.* at 554, and that they do so where they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

In *King*, the Ninth Circuit considered a petition to remove from Rodney King's civil case the judge who had presided over the police officers' criminal trial. The majority denied mandamus only because the governing law was then "insufficiently clear" to make the refusal to recuse "clearly erroneous" under the demanding standard for that writ. 16 F.3d at 993–94. That standard does not govern a motion presented to the district court in the first instance. Judge Reinhardt, concurring, explained that the judge's findings at the criminal sentencing "strongly suggest that Judge Davies has expressed firm conclusions regarding the factual issues that are critical to the outcome of King's civil trial, and that, as a result, his impartiality might reasonably be questioned," and described the question as "a close one." *Id.* at 994, 998 (Reinhardt, J., concurring). The concern identified there is present here in sharper form. The statements at issue were not sentencing findings about third parties; they were direct statements that the defendant lied about the very matter the civil complaint alleges.

*Third*, the appearance is heightened by the Affidavit's account of the Court's disposition toward the Government's conduct, which is the subject of the discovery Andrade anticipates in this action. Aff. ¶ 45. A reasonable observer who knew that the Court had declined to hear argument about that conduct in the criminal case, and had described the arguments as nearly frivolous, would perceive a significant risk that the same conclusions would be applied here without a fresh hearing on a civil record.

Andrade recognizes that a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Clemens*, 428 F.3d at 1179 (quoting *Nichols*, 71 F.3d at 351). But the Ninth Circuit has also recognized that in a close case the balance favors recusal. *Holland*, 519 F.3d at 912. This civil action is at its inception. Reassignment costs nothing in judicial investment and secures an adjudication that neither party

can later question on this ground. Section 455(a) exists "to avoid even the appearance of partiality." *Liljeberg*, 486 U.S. at 860. It should be applied here.

### D. At a Minimum, Referral Is Required.

If the Court does not disqualify itself under § 455, it must still determine whether the Affidavit is timely and legally sufficient under § 144 and, if so, refer the request to the Clerk for random assignment under Civil Local Rule 3-14. *Sibla*, 624 F.2d at 868. For the reasons stated in Parts IV.A and IV.B, the Affidavit satisfies both requirements.

## V. CONCLUSION AND RELIEF REQUESTED

Andrade respectfully requests that the Court:

1. Disqualify itself from further proceedings in this action pursuant to 28 U.S.C. § 455(a) and (b)(1); or, in the alternative,
2. Determine that the accompanying Affidavit is timely and legally sufficient under 28 U.S.C. § 144, and refer the request for disqualification to the Clerk for random assignment to another Judge of this Court pursuant to Civil Local Rule 3-14 for determination on the merits;
3. Direct that no further substantive proceedings occur in this action pending that determination; and
4. Grant such other and further relief as the Court deems just and proper.

Dated: September 29, 2026

Respectfully submitted,

CHARLES C. MORGAN LEGAL PRACTICE, LLC

/s/ Charles C. Morgan

Charles C. Morgan (pro hac vice)

*Attorney for Defendant*

*ROWLAND MARCUS ANDRADE*

**CERTIFICATE OF GOOD FAITH OF COUNSEL**

Pursuant to 28 U.S.C. § 144, I, John M. Pierce, counsel of record for Defendant Rowland Marcus Andrade in this action, certify that the accompanying Affidavit of Rowland Marcus Andrade in Support of Motion for Disqualification is made in good faith.

I further certify that, before filing, I reviewed the record citations in the Affidavit against the cited docket entries and transcripts, and that the Affidavit is the only affidavit under 28 U.S.C. § 144 that Defendant has filed or caused to be filed in this action.

Dated: September 29, 2026

Respectfully submitted,

CHARLES C. MORGAN LEGAL PRACTICE, LLC

/s/ Charles C. Morgan

Charles C. Morgan (pro hac vice)

*Attorney for Defendant*

*ROWLAND MARCUS ANDRADE*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing Notice of Motion and Motion and Memorandum of Points and Authorities complies with the 25-page limitation of Civil Local Rule 7-2(b) and the formatting requirements of Civil Local Rule 3-4.

Dated: September 29, 2026

Respectfully submitted,

CHARLES C. MORGAN LEGAL PRACTICE, LLC

/s/ Charles C. Morgan

Charles C. Morgan (pro hac vice)

*Attorney for Defendant*

*ROWLAND MARCUS ANDRADE*

**CERTIFICATE OF SERVICE**

I certify that on September 29, 2026, I electronically filed the foregoing Notice of Motion and Motion for Disqualification, Memorandum of Points and Authorities, Certificate of Good Faith of Counsel, and the accompanying Affidavit of Rowland Marcus Andrade with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: September 29, 2026

Respectfully submitted,

CHARLES C. MORGAN LEGAL PRACTICE, LLC

/s/ Charles C. Morgan

Charles C. Morgan (pro hac vice)

*Attorney for Defendant*

*ROWLAND MARCUS ANDRADE*