Charles C. Morgan (pro hac vice)
ccmlegalfirm@yahoo.com
**CHARLES C. MORGAN LEGAL PRACTICE, LLC**
4151 Pelicans Nest Drive
Bonita Springs, FL 34134
Tel. 609-636-0544

Attorney for Defendant
ROWLAND MARCUS ANDRADE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NAC FOUNDATION, LLC, et al.,<br><br>Defendants. | Case No. 3:20-cv-04188-RS<br><br>**AFFIDAVIT OF ROWLAND MARCUS ANDRADE IN SUPPORT OF MOTION FOR DISQUALIFICATION OF THE HONORABLE RICHARD SEEBORG PURSUANT TO 28 U.S.C. §§ 144 AND 455**<br><br>(Declaration Under 28 U.S.C. § 1746) |

I, Rowland Marcus Andrade, declare as follows:

## I. INTRODUCTION AND BASIS OF KNOWLEDGE

1. I am a defendant in this action. I was the defendant in *United States v. Andrade*, No. 3:20-cr-00249-RS (N.D. Cal.) (the "Criminal Case"), and a claimant in *United States v. One Parcel of Real Estate Property*, No. 3:20-cv-02013 (N.D. Cal.) (the "Forfeiture Case"), which was originally assigned to the Honorable Vince Chhabria. I am the appellant in *United States v. Andrade*, Nos. 25-5095, 25-6056, and 25-6507 (9th Cir.), which are pending.

2. I submit this affidavit in support of my motion to disqualify the Honorable Richard Seeborg from this action under 28 U.S.C. §§ 144 and 455. I have not previously filed, or caused to be filed, an affidavit under 28 U.S.C. § 144 in this action.

3. The facts stated below are within my personal knowledge, except where I identify a court order, docket entry, transcript, or declaration as the source. Where I identify such a source, the fact is stated based on my review of that record, and I have cited the record so that any reviewing judge may consult it directly. I have tried to state facts rather than characterizations. Where I state the reasons for my belief, I have said so, because § 144 requires that I state both the facts and the reasons for the belief that bias or prejudice exists.

4. I have been in the custody of the Bureau of Prisons at FMC Fort Worth since I self-surrendered on January 9, 2026. My custodial status has limited my ability to confer with counsel in a privileged setting, as the April 13, 2026 status report in this action reflected.

## II. THE RELATED PROCEEDINGS

5. On March 23, 2020, the Government filed the Forfeiture Case against real property in which I held an interest. It was assigned to Judge Chhabria.

6. On June 22, 2020, a grand jury returned the indictment in the Criminal Case. Crim. Dkt. 1. The Criminal Case was assigned to Judge Seeborg through the Court's ordinary random assignment procedures.

7. On June 25, 2020, the Securities and Exchange Commission filed this action and a related action, No. 3:20-cv-04190, both of which were assigned to Judge Seeborg. ECF No. 1.

8. In June 2020, the Government also filed a criminal case against Jack Abramoff, *United States v. Abramoff*, No. 3:20-cr-00260 (N.D. Cal.). Abramoff later testified as a Government witness at my trial.

## III. THE JUNE 30, 2020 REASSIGNMENT

9. On June 4, 2020, Judge Chhabria entered an order in the Forfeiture Case addressing the Government's motion to stay that case and my request for discovery. Forfeiture Case, Dkt. 30. The order stated:

> Andrade's request to have 14 days to respond to the motion to stay is granted. A full response is due 14 days from the date of this order. A hearing on the motion will take place July 1, 2020 at 1:30 p.m. by Zoom. Meanwhile, the government must conduct a careful, responsible, and conservative assessment of what truly cannot be disclosed to Andrade. If the Court determines that the government is reflexively and unnecessarily withholding documents from Andrade, it will consider sanctioning the lawyers and law enforcement entities involved.

*Id.* The hearing was set for July 1, 2020 at 1:30 p.m.

10. On June 30, 2020, the day before that hearing, the Executive Committee of this Court entered an order reassigning the Forfeiture Case and the Abramoff prosecution to Judge Seeborg "given their relationship" to the Criminal Case and the two SEC actions then pending before him. Forfeiture Case, Dkt. 40. The order was signed by then-Chief Judge Phyllis J. Hamilton "FOR THE EXECUTIVE COMMITTEE." *Id. "At the time The EXECUTIVE COMMITTEE did not have the authority to override their own local rules by Executive Order.*

11. Judge Seeborg served as Chief Judge of this Court from February 1, 2021 until July 1, 2026.

12. I do not have personal knowledge of the deliberations of the Executive Committee, and I do not state that Judge Seeborg proposed or directed the reassignment. I state the sequence of events reflected in the record.

## IV. THE 2020 MANDAMUS PETITION

13. On July 10, 2020, I petitioned the United States Court of Appeals for the Ninth Circuit for a writ of mandamus challenging the reassignment. *In re Andrade*, No. 20-72001 (9th Cir.), Dkt. 1-3. The petition contended that the reassignment was made by the Executive Committee rather than, as Civil Local Rule 3-12, Criminal Local Rule 8-1, and 28 U.S.C. § 137 contemplate, by the judge assigned to the earliest-filed case, and asked the Ninth Circuit to direct reassignment to Judge Chhabria and an explanation of the basis for the June 30, 2020 order. *Id.*

14. The petition also described Abramoff's conduct toward me. It stated that in 2017 Abramoff offered to help develop government relationships for AML Bitcoin and NAC Foundation, LLC, that in 2018 he attempted to require me to sell my business interests and intellectual property for $100 million, of which he was to receive a $40 million fee, and that after I refused, his associate David Cohen sent me emails in August 2019 warning of "possible bad outcomes," including civil forfeiture and criminal prosecution, if I continued to refuse. *Id.* at 8–10, 24.

15. On July 21, 2020, the Ninth Circuit denied the petition. The order stated that I had "not demonstrated that this case warrants the intervention of the court by means of the extraordinary remedy of mandamus," citing *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977). *In re Andrade*, No. 20-72001, Dkt. 3. The order did not address whether the reassignment complied with the Court's local rules.

16. I identify the petition because it shows that I raised my concern about the reassignment, and about Abramoff's conduct toward me, at the time the reassignment occurred, and not for the first time in this motion.

## V. THE OCTOBER 4, 2024 CIPA ORDER

17. On July 13, 2024, the Government moved in the Criminal Case under Section 4 of the Classified Information Procedures Act ("CIPA") for authorization to withhold classified information from discovery. Crim. Dkt. 323.

18. In response, my counsel submitted to Judge Seeborg an *ex parte* declaration explaining why the defense needed the information. A public version of that submission was later filed in the Ninth Circuit. *United States v. Andrade*, No. 25-5095 (9th Cir.), Dkt. 23-2.

19. Paragraph 24 of that submission specifically identified the FBI's informant file on Jack Abramoff. *Id.*, Attachment A ¶ 24. The submission explained that the defense sought the file because it bore on whether Abramoff was acting as a Government informant during the period charged in the indictment, on his relationship with the agents who investigated me, and on his use of AML Bitcoin in transactions independent of me, which the defense contended was exculpatory and impeaching. *Id.*, Attachments A and B at 4, 6.

20. On October 4, 2024, Judge Seeborg granted the Government's motion. Crim. Dkt. 367. The order stated that the defense had not explained why it needed access to the protected materials. *Id.* at 3:2–3.

21. I have read the defense submission and the order. The submission identified the Abramoff informant file and explained its asserted relevance. The order stated that the defense had not explained its need for the material.

## VI. EVIDENCE CONCERNING ABRAMOFF'S INFORMANT STATUS

22. On June 3, 2025, my former counsel, Kerrie Dent, declared under penalty of perjury that counsel for former FBI Special Agent Jonathan Buma had represented that Mr. Buma could

confirm that Abramoff had been a Government informant, and that Mr. Buma's testimony would contradict Abramoff's trial testimony on that point. Crim. Dkt. 657-1 ¶ 9.

23. On February 24, 2025, Abramoff testified at my trial that he was not a Government informant. Trial Tr. 1788:18–19. FBI Special Agent Wynar, whom the defense didn't know at the time was Abramoff's handler, was present in the conference room at Abbe Lowell's law firm while Abramoff testified before the jury *via* video and also consulted with Abramoff and AUSA Christiaan Highsmith during breaks in his testimony.

24. Other defense declarations stated that agents present at a February 2020 meeting with a confidential human source were instructed to edit an FBI Form 302 report to remove information about Abramoff relevant to my case; that other reports authored by Mr. Buma were not produced in discovery; and that a second witness would testify to suppression of evidence relating to Landfair Capital Consulting, LLC, a company owned by Abramoff's son. Crim. Dkt. 498-3 ¶¶ 7–8, 33–41; Dkt. 548-1 at 2:16–3:10 & ¶¶ 4–5.

25. On February 3, 2025, former United States Treasury Agent Dr. Natalie "May" Edwards provided a declaration in support of my motion for an evidentiary hearing concerning government misconduct. Dr. Edwards confirmed that the government suppressed evidence concerning Russian diplomats and potential money laundering by Jack Abramoff during 2017–2018, including his use of a company called Landfair Capital to conceal the money. Abramoff's 2017–2018 activities fall within the period relevant to Andrade's indictment. (Crim. Dkt. 529 at 8, ¶¶ 4–6).

26. On February 6, 2025, former defense counsel provided a sworn statement in support of my motion for reconsideration of the Court's February 5, 2025, denial of my motion for an evidentiary hearing. In that same sworn statement, former counsel stated that former FBI Special Counterintelligence Agent Jonathan Buma could testify regarding Abramoff's operation of pro-Russian and pro-Putin campaigns, as well as Abramoff's use of AML Bitcoin to facilitate international money laundering. Former counsel further stated that agent Buma could confirm how Abramoff's two campaigns were the "Anti-Corruption" campaign (aimed at tying Joe Biden, Trump's chief political rival at the time, to corruption in Ukraine); and the "V/V" campaign (a pro-Russia, pro-Putin campaign). A key element to both campaigns was the use of media to spread the desired narrative. Counsel stated under the threat of purjery that she was told that Agent Buma also could testify that his interpretation of Abramoff's notes is that the funding for these campaigns came, in part, from the promotion and sale of AML Bitcoin."

27. In that same February 6, 2025, sworn statement, former counsel also stated that the Landfair Capital account referenced by Dr. Edwards was dubbed the "money connection" by the case agents during their investigation of Abramoff. Former counsel stated that the account was used for purchases of AML Bitcoin made by Abramoff and his associates, for certain AML Bitcoin expenditures, and to camouflage Abramoff's wrongdoing while he was working with AML Bitcoin. (Crim. Dkt. 548-1 at 2, ¶¶ 4–5; Aff. ¶ INSERT.)

28. I do not ask the reviewing judge to find that those declarations are true. I identify them because they are sworn, they are in the record, and they bear on the significance of the informant file and the suppressed evidence the defense had requested before trial.

## VII. RESTRICTION OF ABRAMOFF-RELATED EVIDENCE AT TRIAL

29. At trial the defense sought to present evidence of Abramoff's activities and relationships independent of me during the period charged in the indictment, as bearing on his credibility, his motives, and whether the evidence showed separate schemes rather than a single conspiracy.

30. When defense counsel questioned FBI Special Agent Quinn about AML Bitcoin-related documents recovered in a separate investigation, the agent acknowledged that the documents existed, and the Court ended the inquiry, stating: "this is not an area — you know this is not an area to go into." Crim. Dkt. 628, Trial Tr. 2283–84.

31. The Court also excluded or restricted documentary evidence of Abramoff's communications with third parties concerning the use of AML Bitcoin in transactions unrelated to me and excluded statements I made to an undercover FBI agent that the defense contended were exculpatory. Crim. Dkt. 656 at 33:1–13, 34:1–24 & n.35; Trial Tr. 1841:5, 1858:25–1861:7 (Trial Exs. 3261, 3262); Crim. Dkt. 662 (Trial Ex. 2360); Crim. Dkt. 777 at 13:16–14: and Dkt. 777-9 at 98.

32. I recognize that these were evidentiary rulings. I identify them because of their relationship to the instruction ruling described next.

## VIII. THE MULTIPLE-CONSPIRACY INSTRUCTION

33. On January 17, 2025, the defense requested a multiple-conspiracy instruction. Crim. Dkt. 480.

34. The Court did not rule on the request until either after or the very end of the presentation of evidence period. On March 5, 2025, immediately before the jury was instructed,

the Court denied the request on the ground that sufficient evidence of multiple conspiracies had not been presented. Crim. Dkt. 631, Trial Tr. 2673:24–2674:13.

35. In denying my motion for release pending appeal, the Court stated that there was no "spillover" between my charged conduct and Abramoff's actions. Crim. Dkt. 781 at 6:7–27.

36. The evidence the defense was restricted from presenting, described in Section VII, was the evidence the defense contended supported the instruction. The trial record also includes testimony that Brian Darling, who wrote articles promoting AML Bitcoin, sourced his articles through Abramoff and denied receiving information from me. Crim. Dkt. 570, Trial Tr. 743:8, 751:11–19, 755:7–23. The withheld CIPA evidence may have supported how Brian Darling who is a lobbyist may have been assisting Abramoff in his U.S. election related international money laundering activities. Id., Attachment A ¶ 14.

## IX. STATEMENTS FROM THE BENCH

37. During trial, in the course of a Government objection to evidence offered by the defense, the Court said to the prosecutor: "the U.S. Attorney has an obligation — wants to protect the record, a good record. So if you think, 'Oh, great, we just won that but he's totally out to lunch,' you ought to protect the record." Trial Tr. 2227. The prosecutor responded that the Court was "absolutely right on this one." *Id.* at 2227:15.

38. At the June 24, 2025, hearing on my motion for a new trial, my counsel stated that additional information concerning Government misconduct was set out in Ms. Dent's final declaration. Crim. Dkt. 718, Tr. 3:23–4:15. The Court stated that it did not wish to hear further argument concerning alleged Government misconduct. *Id.*, Tr. 28:11–15.

39. At the same hearing, the Court stated that I had lied to people about what the purchasers were buying in 2017 and 2018, and that the purchasers believed they were purchasing a complete product. *Id.*

40. During trial, the Court ruled that the purchasers' individual contracts, the terms and conditions of sale, the AML Bitcoin White Paper, and purchaser wallet records were inadmissible hearsay while rejecting the fact that they were being offered as the truth. I recognize that was an evidentiary ruling. I identify it because those documents are the documents I contend show what purchasers were told they were buying, and because the Court's June 24, 2025, statement concerned that same question.

41. On March 11, 2026, in denying reconsideration of my motion for release pending appeal, the Court wrote that my "arguments and [my] repeated requests for relief tread woefully close to frivolousness," and addressed my CIPA-related arguments in those terms. Crim. Dkt. 828 at 1, 4–5.

## X. THE OCTOBER 28, 2025 REASSIGNMENT OF TWO ABRAMOFF-RELATED PROSECUTIONS

42. On August 9, 2023, the Court ruled that the Criminal Case was not related to two prosecutions then pending before the Honorable James Donato. *See* Crim. Dkt. 780.

43. On October 28, 2025, both prosecutions were reassigned from Judge Donato to Judge Seeborg. No. 3:23-cr-00140-RS, Dkts. 65, 66; No. 3:22-cr-00171-RS, Dkts. 34, 35. At that time, Judge Seeborg was Chief Judge of this Court.

## XI. BEARING ON THIS ACTION

44. This action arises from the same offering, the same disclosures, the same investors, and the same witnesses as the Criminal Case. In its January 20, 2021, order in this action, the Court described the AML Bitcoin White Paper as disclosing that ICO participants would receive stand-in "ABTC tokens" that could be exchanged one-for-one for AML Bitcoin once its blockchain was completed. ECF No. 26. Whether purchasers were told, and understood, what they were buying is the central factual question in this action. It is the question on which the Court made the June 24, 2025, statement described in paragraph 39.

45. If this action proceeds, I anticipate seeking discovery concerning: the Government's knowledge of Abramoff's status as an informant; the alteration and suppression of FBI Form 302 reports concerning Abramoff; communications among the SEC, the FBI, and other agencies concerning the investigation of me, including whether the SEC's cooperation was used to obtain foreign evidence outside the Mutual Legal Assistance Treaty process (*see* Crim. Dkt. 777-4); and testimony from former Special Agent Buma, U.S. Treasury Agent Dr. Edwards, and others with knowledge of these matters. These are the subjects on which the Court declined to hear argument on June 24, 2025, and which it later characterized as bordering on frivolous.

## XII. REASONS FOR MY BELIEF

46. Based on the facts stated above, I believe that Judge Seeborg has a personal bias against me and in favor of the Government, and that his impartiality in this action may reasonably be questioned, for the following reasons:

(a) The Forfeiture Case was reassigned to Judge Seeborg by administrative order the day before a hearing at which Judge Chhabria had said he would consider

sanctioning the Government for withholding documents from me, and that hearing did not go forward before Judge Chhabria.

(b) The defense's *ex parte* CIPA submission identified the Abramoff informant file and explained its relevance, and the Court's order stated that the defense had not explained its need.

(c) Abramoff then testified that he was not an informant, and sworn statements filed after trial state that a former FBI agent can confirm that he was, and that FBI reports concerning Abramoff were altered.

(d) The defense was restricted from developing evidence of Abramoff's independent conduct, and the Court then denied a multiple-conspiracy instruction on the ground that such evidence had not been presented, and later found there was no spillover.

(e) The Court advised the prosecution to protect its record even where it had won a point and thought the court was out to lunch on that one, declined to hear argument concerning Government misconduct, and stated that I had lied to purchasers about what they were buying, which is the central question in this action knowing the Court had previously ruled that the purchasers knew exactly what they were being offered but yet chose to withhold or restrict that evidence from the jury

(f) After ruling in 2023 that my case was not related to two other Abramoff-related prosecutions, the Court assumed those prosecutions in 2025 while serving as Chief Judge.

(g) The Court has characterized my arguments concerning the Government's handling of Abramoff-related evidence as bordering on frivolous, which is the subject of the discovery I anticipate in this action.

47. I submit this affidavit so that its timeliness and legal sufficiency may be determined under 28 U.S.C. § 144 and Civil Local Rule 3-14 and, if it is found sufficient, so that the merits of my request may be determined by another judge of this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2026, at Fort Worth, Texas.

/s/ Rowland Marcus Andrade
ROWLAND MARCUS ANDRADE