JASON H. LEE (Cal. Bar No. 253140)
leejh@sec.gov
JASON M. BUSSEY (Cal. Bar No. 227185)
busseyja@sec.gov
MICHELLE LO (NY Bar Reg. No. 4325163)
lomi@sec.gov
ALICE L. JENSEN (Cal. Bar No. 203327)
jensena@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 700
San Francisco, CA 94104
(415) 705-2500

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NAC Foundation, LLC and ROWLAND MARCUS ANDRADE,<br><br>Defendants. | Case No. 3:20-cv-4188-RS<br><br>**SEC'S OPPOSITION TO DEFENDANT ANDRADE'S MOTION FOR DISQUALIFICATION OF THE HON. RICHARD SEEBORG**<br><br>Hon. William H. Orrick<br>Hearing: None requested. |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

A. The Related Civil and Criminal Actions ........ 1

1. This Civil Case ........ 1

2. The Criminal Case ........ 2

3. The Forfeiture Case ........ 2

B. Andrade's March 2025 Conviction and July 2025 Sentencing ........ 3

C. The January 2021 Stay Order in This Action Is Extended Five Times ........ 3

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 6

A. Andrade's Motion, Filed More Than Six Years After This Case Commenced and More Than One Year After His Sentencing, Is Untimely ........ 6

B. No Reasonable Person Would Question Judge Seeborg's Impartiality ........ 9

V. CONCLUSION ........ 12

## Table of Authorities


**Cases** **Page(s)**

*Clemens v. U.S. Dist. Court for Central Dist. of Cal.*, 428 F.3d 1175 (9th Cir. 2005) ........ 6

*Davies v. Cmm'r*, 68 F.3d 1129 (9th Cir. 1995) ........ 6

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) ........ 6

*Leslie v. Grupo ICA*, 198 F.3d 1152 (9th Cir. 1999) ........ 5

*Liteky v. United States*, 510 U.S. 540 (1994) ........ 5, 11

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084 (N.D. Cal. 2017) ........ *passim*

*Preston v. United States*, 923 F.2d 731 (9th Cir. 1991) ........ 7

*United States v. Holland*, 519 F.3d 909 (9th Cir. 2008) ........ 5, 9, 11

*United States v. McTiernan*, 695 F.3d 882 (9th Cir. 2012) ........ 5

*United States v. Rogers*, 119 F.3d 1377 (9th Cir. 1997) ........ 6

*United States v. Sibla*, 624 F.2d 864 (9th Cir. 1980) ........ 4, 5, 6

*Yagman v. Republic Ins.*, 987 F.2d 622 (9th Cir. 1993) ........ 5

**Statutes**

28 U.S.C. § 144 ........ *passim*

28 U.S.C. § 455 ........ *passim*

**Rules**

Federal Rule of Criminal Procedure 16 ........ 10

Civil Local Rule 3-14 ........ 4, 6

Civil Local Rule 11 ........ 3

## I. INTRODUCTION

More than six years after the U.S. Securities and Exchange Commission filed this action, Defendant Rowland Marcus Andrade (Andrade) contends for the first time that Judge Seeborg should be disqualified because he purportedly exhibited personal bias against Andrade when presiding over a related criminal case and his impartiality may reasonably be questioned. Andrade's disqualification bid comes more than 18 months after the jury in the criminal case convicted him of wire fraud and money laundering and more than one year after Judge Seeborg sentenced Andrade to 84 months in prison and ordered him to forfeit over $8 million and to pay over $2 million in restitution. Andrade's motion, which relies on a so-called "pattern" of events that ended *more than seven months ago*, is not reasonably prompt, and it appears to have been made to further delay the proceedings in this case. The Court should deny his motion on timeliness grounds alone.

Even were the Court to reach the merits, it should deny the motion. Andrade relies entirely on adverse rulings and remarks Judge Seeborg made from the bench in the course of his criminal case, and administrative orders by Judge Seeborg and others. None reflect any recognizable bias against Andrade. Even if they did, Andrade acknowledges that none stem from an "extrajudicial source," and it is "only in the rarest circumstances" that opinions derived from judicial proceedings can support disqualification. This is not such a case. Andrade falls far short of carrying his burden of demonstrating that a well-informed, thoughtful observer with knowledge of all the facts would conclude that Judge Seeborg's impartiality in this action might reasonably be questioned. The Court should therefore deny Andrade's motion.

## II. BACKGROUND

### A. The Related Civil and Criminal Actions

#### *1. This Civil Case*

The SEC filed its complaint in this matter on June 25, 2020, alleging that Andrade and NAC Foundation, LLC (NAC) violated the federal securities laws in connection with the fraudulent and unregistered offer and sale of crypto assets by NAC and its founder and CEO, Andrade. Civil Case, ECF No. 1. As the SEC alleged, NAC was in early-stage development of a

blockchain-based digital token called AML Bitcoin, which NAC claimed was superior to the original bitcoin because AML Bitcoin had purported anti-money laundering, know-your-customer, and other encoded security features and was purportedly compliant with regulatory requirements relating to cryptocurrencies. *See id.* With lobbyist and consultant Jack Abramoff, NAC and Andrade promoted the offering using false and misleading statements. *See id.* This case was assigned to Judge Seeborg the following day, June 26, 2020. Civil Case, ECF No. 2.

***2. The Criminal Case***

Three days before the SEC filed its complaint, on June 22, 2020, the United States filed an indictment charging Andrade with wire fraud and money laundering. *United States v. Andrade*, No. 3:20-cr-00249-RS (N.D. Cal.) (Criminal Case), Criminal Case ECF No. 1. The indictment similarly alleged that Andrade, the founder and principal of NAC, engaged in a scheme that raised millions of dollars through false and misleading statements to investors about a crypto asset called AML Bitcoin and the purported technology behind it. *See id.*

***3. The Forfeiture Case***

On June 25, 2020, the United States filed a notice that the Criminal Case was related to a concurrently filed prosecution against Jack Abramoff, *United States v. Abramoff*, No. 20-cr-260-CRB (N.D. Cal. filed June 25, 2020), and may be related to a civil forfeiture action filed in March 2020, *United States of America v. One Parcel of Real Estate Property Located at 9414 Plaza Point Drive, Missouri City, Texas, 77459*, No. 20-cv-02013 VC (N.D. Cal. filed Mar. 23, 2020) (Forfeiture Case). Criminal Case, ECF No. 5. In the Forfeiture Case, the United States alleged that the defendant property was purchased using funds derived from a wire fraud scheme and money laundering transactions involving Andrade. *See* Forfeiture Case, ECF No. 1. On June 30, 2020, the Executive Committee for the Northern District of California, through an order signed by then-Chief Judge Phyllis Hamilton, reassigned the Forfeiture Case and *United States v. Abramoff*, No. 20-cr-260-CRB, to Judge Seeborg, given the two cases' relationship with three cases—this action, the Criminal Case, and *SEC v. Abramoff*, 20-cv-4190-RS (filed June 25, 2020)—pending before Judge Seeborg. *See* Forfeiture Case, ECF No. 40.

On July 10, 2020, Andrade filed a petition for writ of mandamus to the Ninth Circuit

challenging the Executive Committee's reassignment of the Forfeiture Case. *See id.*, ECF No. 50. The Ninth Circuit denied Andrade's petition on July 21, 2020, finding that he had not demonstrated that the matter warranted the extraordinary remedy of mandamus. *See id.*, ECF No. 53.

On July 17, 2020, the United States voluntarily moved to dismiss the Forfeiture Case without prejudice. *See id.*, ECF No. 51. In response, Andrade sought dismissal with prejudice and asked that the Court first decide a Rule 11 motion he had filed, as well as direct the Government to pay his attorney's fees and costs incurred in defending against the Forfeiture Case. *Id.*, ECF No. 55. On August 20, 2020, the Court denied the Government's motion for voluntary dismissal without prejudice and extended the stay in the Forfeiture Case to the conclusion of Andrade's Criminal Case. *Id.*, ECF No. 57.

**B. Andrade's March 2025 Conviction and July 2025 Sentencing**

On March 12, 2025, following a five-week trial, the jury in the Criminal Case found Andrade guilty of wire fraud and money laundering. Criminal Case, ECF No. 615. The Court on July 31, 2025, sentenced Andrade to 84 months in custody and entered judgment, and it issued an initial order of forfeiture. *Id.*, ECF No. 719. Andrade appealed the judgment on August 12, 2025, which is currently pending before the Ninth Circuit. *Id.*, ECF No. 725. On September 16, 2025, the Court in the Criminal Case ordered Andrade to pay a forfeiture money judgment of $8,374,609 and restitution of $2,203,920.29. *Id.*, ECF No. 740.

Andrade self-surrendered to the Bureau of Prisons on January 9, 2026. *Id.*, ECF No. 828.

**C. The January 2021 Stay Order in This Action Is Extended Five Times**

In January 2021, when this case was in the early stages, the Court entered an order pursuant to a stipulation by the parties that (1) vacated all case deadlines, including Defendants' Answers, (2) stayed all proceedings, including discovery, until further order of the Court; and (3) required the parties to file a request for a status hearing "within 30 days after resolution" of the Criminal Case. Civil Case, ECF No. 29.

On August 27, 2025, following Andrade's sentencing on July 31, 2025, but before his restitution had been decided, the SEC filed a status report requesting that the stay be extended

until 60 days after the Court decided restitution. *Id.*, ECF No. 45. The Court granted this request and ordered "that the stay entered at ECF No. 29 is extended until 60 days after resolution of restitution in the District Court criminal proceeding in *United States v. Rowland Marcus Andrade*, Case No. 3:20-cr-249-RS." *Id.*, ECF No. 47.

The Court subsequently extended the stay three more times pursuant to the parties' stipulations on November 12, 2025,[1] January 13, 2026, and April 14, 2026. *Id.*, ECF Nos. 51, 53, 55. On July 13, 2026, the parties submitted an updated status report setting forth separate proposals for further proceedings in this case. *Id.*, ECF No. 56. The SEC requested that the Court lift the stay and enter a case schedule, while defense counsel reported ongoing difficulties communicating with Andrade in a privileged setting due to the latter's custodial status and requested that the stay be continued. *See id.* On July 27, 2026, over the SEC's objections, the Court entered an order extending the stay until October 12, 2026. *Id.*, ECF No. 58.

A little over one week before the current stay was set to expire, on October 2, 2026, Andrade filed this Motion for Disqualification of the Honorable Richard Seeborg Pursuant to 28 U.S.C. § 144 and 455 and Civil Local Rule 3-14. *Id.*, ECF No. 61. Judge Seeborg promptly referred Andrade's disqualification motion for reassignment to another judge, *id.*, ECF No. 62, and the motion was reassigned to Judge Orrick.

## III. LEGAL STANDARD

Andrade invokes 28 U.S.C. § 144 and 28 U.S.C. § 455 as grounds for Judge Seeborg's disqualification in this six-year-old case. Section 144 provides that another judge shall be assigned to hear a recusal motion where a party files a timely and sufficient affidavit averring that the judge before whom the matter is pending has a personal bias or prejudice either against the party or in favor of an adverse party, and setting forth the facts and reasons for such belief. *See* 28 U.S.C. § 144. Similarly, section 455 requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), including where the judge "has a personal bias or prejudice concerning a party," *id.* § 455(b)(1). *See United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) (explaining that section 455(b)(1) "simply provides a

[1] Defendants subsequently withdrew their assent to the stipulation. *See* ECF No. 50.

specific example of a situation in which a judge's 'impartiality might reasonably be questioned' pursuant to section 455(a)").

Courts apply the same substantive standard for recusal under section 144 and section 455 where the moving party does not allege grounds for recusal other than those relating to bias or prejudice: "Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (internal quotations and citation omitted); *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (citation omitted); *see also United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) ("The 'reasonable person'" is "a well-informed, thoughtful observer."). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994); *see also Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir. 1999) (noting that allegations of bias or prejudice that stem entirely from a judge's adverse rulings are not adequate bases for recusal). "[W]hen no extrajudicial source is involved"—that is, when a judge's opinions do not "derive from a source outside judicial proceedings"—the judge's rulings must reflect "deep-seated favoritism or antagonism that would make fair judgment impossible," a standard that is met "only in the rarest circumstances." *Liteky*, 510 U.S. at 554-55. Likewise, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" and "*may* do so if they reveal an opinion that derives from an extrajudicial source." *Id.* at 555; *Holland*, 519 F.3d at 913-14.

While the same substantive standards apply, the procedural requirements of the two recusal provisions differ. Unlike section 455, which is "self-enforcing on the part of the judge," section 144 "expressly conditions relief upon the filing of a timely and legally sufficient affidavit." *Sibla*, 624 F.2d at 867-68. A judge who declines to grant recusal under section 455(a) and (b)(1) must still assess the legal sufficiency of the affidavit filed pursuant to section 144 and refer the motion to another judge for a merits determination if the affidavit is sufficient on its face. *Sibla*, 624 F.2d at 828 ("The net result is that a party submitting a proper motion and affidavit under section 144 can get two bites of the apple.").

The Ninth Circuit has cautioned that a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Clemens v. U.S. Dist. Court for Central Dist. of Cal.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (quotation omitted). "[S]ection 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Id.* at 1178.

## IV. ARGUMENT

### A. Andrade's Motion, Filed More Than Six Years After This Case Commenced and More Than One Year After His Sentencing, Is Untimely.

Under section 144, reassignment of a motion for disqualification is required only if there is a "timely and sufficient affidavit," as determined by the judge to whom the motion is directed. *See Sibla*, 624 F.2d at 867. Motions under section 455 must also "'be made in a timely fashion.'" *Davies v. Cmm'r*, 68 F.3d 1129, 1131 (9th Cir. 1995) (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992)). Courts should assess the timeliness of disqualification motions to prevent litigants from using recusal motions "for strategic purposes." *E. & J. Gallo Winery*, 967 F.2d at 1295. Here, Judge Seeborg referred Andrade's entire motion for disqualification for reassignment to another judge without expressly assessing the timeliness or sufficiency of the affidavit. Civil Case, ECF No. 62. *See* Commentary to Civil L.R. 3-14 (permitting referral of motions under section 455 to the clerk so another judge can determine disqualification). As a threshold matter, this Court should reject Andrade's motion as untimely. None of the four reasons Andrade cites, *see* Mot. at 8-10, remotely establishes good cause for the lengthy delay in bringing this motion. *See United States v. Rogers*, 119 F.3d 1377, 1382 (9th Cir. 1997) ("[A] delay in bringing a motion to disqualify may only be excused for good cause") (emphasis added).

*First*, Andrade contends that the grounds for the motion rest upon a pattern that began in June 2020 and was "completed by events in 2025 and 2026," with the last event in the purported "pattern" occurring on March 11, 2026, when Judge Seeborg characterized Andrade's arguments

and repeated requests for bail pending appeal as "tread[ing] woefully close to frivolousness." *See id.* at 9 (citing Criminal Case, ECF No. 828 at 1). But Judge Seeborg's March 2026 order was not the first time he denied Andrade's requests for related relief. *See* Criminal Case, ECF No. 828 at 1. Indeed, the order noted Andrade's multiple requests:

> He moved for a bond pending appeal, which was denied. After successfully moving to extend his self-surrender date once, he moved to extend it again. That was denied. He then moved to reconsider. That was denied. He then filed an emergency motion in the Ninth Circuit to stay his self-surrender date. Again, denied. Having finally surrendered to the custody of the Bureau of Prisons (BOP), he moves once more for release pending adjudication of his appeal.

*See id.* Even accepting as true that Andrade did not ascertain the grounds for seeking disqualification until the March 2026 Order describing his well-worn requests as "tread[ing] woefully close to frivolousness," Andrade does not articulate any good cause for waiting another seven months to bring this motion. By contrast, in *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991), the case on which Andrade primarily relies for his timeliness argument, the movant did not learn the relevant facts "until ten days before the first recusal motion was filed," a far cry from the *seven-month* delay here.

*Second*, Andrade points to the stay in this case to argue that there has not been any investment of judicial resources since January 2021. Mot. at 9. But the reason this case has not proceeded is due to Andrade's routine requests to extend the stay. In each of the status reports filed on April 14, 2026, July 13, 2026, and October 12, 2026, defense counsel has reported difficulties communicating with Andrade and has requested that the stay be continued for 90 days, 90 days, and six months, respectively. *See* Civil Case, ECF Nos. 55, 56, 63. Although the SEC accommodated the stay request in April 2026, it sought to move the litigation forward in the status reports filed in July 2026 and October 2026. *See id.*, ECF Nos. 56, 63. In the parties' most recent status report to Judge Seeborg, Andrade has, unsurprisingly, pointed to this pending disqualification motion as a reason why proceedings in this six-year-old litigation should be further delayed. *See id.*, ECF No. 63. Meanwhile, in his criminal appeal, Andrade has filed multiple requests to extend the deadline to file an opening brief, resulting in a July 31, 2026, order that "[n]o further requests to extend time to file the opening brief [beyond November 2,

2026] will be granted absent a showing of extraordinary and compelling circumstances." *United States v. Andrade*, Case No. 25-5095 (9th Cir.), ECF No. 63. On October 14, 2026, Andrade filed just such a further request. *Id.*, ECF No. 69.

*Third*, Andrade summarily argues that his communication challenges with counsel since he reported to federal custody in January 2026 "is good cause for the most recent events and this filing." *See* Mot. at 10. But all but one of the instances of Judge Seeborg's purported bias occurred before Andrade reported to federal custody in January 2026. Moreover, his stated communications challenges have not otherwise prevented Andrade from actively prosecuting his appeal, including his filing of a motion for reconsideration on June 16, 2026, and a motion to extend time to file his opening brief on July 2, 2026, among others. *See United States v. Andrade*, Case No. 25-6507 (9th Cir.), ECF Nos. 44, 45.

*Fourth*, Andrade casts this as the "earliest practical moment at which the question can be resolved before proceedings resume." Mot. at 10. Not so. Even accepting his "cumulative" bias argument, the earliest practical moment would have been shortly after March 11, 2026—or, at the latest, the status report that the parties filed on April 14, 2026, or the status report filed on July 13, 2026. *See* Civil Case, ECF Nos. 55, 56. Andrade did not indicate in either report that he believed grounds existed for a disqualification motion.

Andrade cannot show good cause for waiting to bring this motion in October 2026, more than 18 months after his criminal conviction, more than one year after he was sentenced and ordered to forfeit a money judgment and pay restitution, and approximately seven months after the last judicial act he claims established Judge Seeborg's partiality. The Court should deny this motion as untimely. *Cf. Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1088 (N.D. Cal. 2017) (noting that "a good case could be made" that motion for disqualification under sections 144 and 455, which "was the first of its kind to be filed in this nearly two-year-old and highly active case," should be terminated based on timeliness and sufficiency grounds, but nevertheless addressing the merits "in the interest of completeness and clarity"), *aff'd*, No. 21-15953, 2022 WL 3572943 (9th Cir. Aug. 19, 2022).

**B. No Reasonable Person Would Question Judge Seeborg's Impartiality**

Beyond its untimeliness, the disqualification motion is without merit. The standard for deciding whether a district judge should be recused for personal bias or prejudice is an objective one and asks "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Holland*, 519 F.3d at 913-14. The "reasonable person" for this inquiry is not "someone who is 'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.'" *Id.* at 913 (citations omitted); *Nat'l Abortion Fed'n*, 257 F. Supp. 3d at 1089. Andrade concedes, as he must, that none of the grounds raised in his motion would, standing alone, suffice to establish bias or prejudice. Mot. at 13. Even considered together, the events he points to fall far short of causing an objective observer to question Judge Seeborg's impartiality.

Andrade places great weight on the claim that Judge Seeborg "already announced conclusions from the bench in the criminal case" that he claims are central to this case. Mot. at 3; *see also id.* at 9, 13, 14, 15. In support of that assertion, Andrade cites page 28 of Docket No. 718 from the Criminal Case, where he claims Judge Seeborg expressed the view that Andrade "'lied to people about what the purchasers were buying'" during the hearing on Andrade's motion for judgment of acquittal or in the alternative for a new trial. Mot. at 3. But the quoted language does not appear on that or any other page of the hearing transcript. The closest statement in Docket No. 718 appears on page 15, where Judge Seeborg made the following remarks:

> And looking at this from 50,000 feet, there is no way anyone can argue to me that the defense was precluded from making its point that Mr. Abramoff was the bad guy. You had plenty of time to do it and you did your best, and I think at the end of the day the problem that you have is that I think the centerpiece of this case is that Mr. Andrade lied to investors to get them to part with their money, and at the end of the day that's what the jury found.

Criminal Case, ECF No. 718, at 15:13-21.[2]

---

[2] Later in the hearing Judge Seeborg asked, "How does that have anything to do with what I just said about the evidence against Mr. Andrade, which was that he lied to investors to get their money?," Criminal Case, ECF No. 718, at 16:5-7, and remarked, "It is the focus of this case was when he was making representations, which he knew were a lie, to get the investor money. That's what the case was about," *id.* at 19:7-9. After hearing defense counsel's arguments, Judge Seeborg praised defense counsel's efforts, noting, "You did an admirable job, but more time I don't buy." *See id.* at 27:7-8.

Judge Seeborg made those comments in response to defense counsel's argument that the defense had been prejudicially "denied the opportunity to introduce the Abramoff documents that that [sic] proved . . . that he was engaged in a separate scheme . . . ." *Id.* at 14. Thus, Judge Seeborg was expressing not his own opinion that "Mr. Andrade lied to investors" but rather his view that the "centerpiece" of the Government's case was "that Mr. Andrade lied to investors," a conclusion that the jury had reached. *Id.* at 14-15. The statement establishes no partiality.

Andrade similarly overstates the other purported evidence of Judge Seeborg's having already "announced conclusions from the bench in the criminal case"—namely, the March 2026 order denying Andrade's motion for bail pending appeal. Judge Seeborg described as "tread[ing] woefully close to frivolousness" Andrade's repeated attempts to obtain release pending appeal. Even if Andrade's arguments in support of his motion for bail pending appeal had some relevance to this case, any frustration that may be reflected in Judge Seeborg's March 2026 order is nothing more than a natural response to a litigant's efforts to rehash arguments previously presented and rejected.

The additional decisions by and remarks from Judge Seeborg on which Andrade relies provide no greater support for disqualification. Specifically, he cites:

- the Court's October 4, 2024, Order granting the Government's In Camera, Ex Parte, Under Seal Motion for an Order Pursuant to Section 4 of the Classified Procedures Act and Federal Rule of Criminal Procedure 16(d)(1), Criminal Case, ECF No. 367;
- evidence purportedly presented relating to whether Jack Abramoff was a Government informant;
- the Court's purported curtailing of defense inquiry into Abramoff's activities independent of Andrade, stating "this is not an area – you know this is not an area to go into," *see* Criminal Case, ECF No. 628, Trial Tr. 2282:13-2284:7;
- the Court's denial of Andrade's requested multiple-conspiracy instruction;
- Judge Seeborg purportedly "advising" the prosecution by remarking that it "ought to protect the record" even where it believed it had "just won" the point during a colloquy regarding an evidentiary issue, *see* Criminal Case, ECF No. 627, Trial Tr.

2223:2-2227:19; and

- At the hearing on Andrade's motion for judgment of acquittal or in the alternative for a new trial, Judge Seeborg responded in the affirmative when defense counsel stated "And we gathered some additional information that was in Ms. Dent's final declaration about our misconduct motion but I'm assuming the Court doesn't want to hear more about the misconduct motion," *see* Criminal Case, ECF No. 718, at 28:11-15.

*See* Mot. at 11-12. These rulings and isolated remarks all occurred in the course of Andrade's criminal prosecution. Even assuming they evidence hostility to Andrade, under the "extrajudicial source" rule, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" and "*may* do so if they reveal an opinion that derives from an extrajudicial source." *Liteky*, 510 U.S. at 555; *Holland*, 519 F.3d at 913-914 ("[T]he 'extrajudicial source' factor . . . generally requires as the basis for recusal something other than rulings, opinions formed or statements made by the judge during the course of trial."). Because all of the above examples consist of "judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and witnesses," at most, "they are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555, 556.

Indeed, cautioning a party not to wade into an off-limits area of inquiry or permitting the prosecution to again address a hearsay issue that the Court had previously decided are not inappropriate comments that might support the appearance of partiality. They are similar to comments made in *National Abortion Federation* by Judge Orrick at a telephonic hearing that a defendant would be "well advised . . . that he is obligated to follow the Court's orders [and] not try to skate around them and cause real harm to human beings . . . ," which defendants cited as one of their grounds for seeking Judge Orrick's recusal. 257 F. Supp. 3d at 1092. Judge Donato, who was assigned to hear the recusal motion in *National Abortion Federation*, rejected that argument, finding that "[f]ar from being an inappropriate comment that might support the appearance of partiality, the statement, to the extent it was a reference to those earlier findings,

was an opinion 'formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings'" and did not "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *See id.*

The remaining events on which Andrade relies cannot even be characterized as adverse rulings or remarks by Judge Seeborg. He points to the June 2020 reassignment of the Forfeiture Case by the Executive Committee from Judge Chhabria to Judge Seeborg, Mot. at 11, but he does not, and cannot, explain how an administrative reassignment made *by the Executive Committee* could reflect bias or prejudice by Judge Seeborg. On the contrary, Andrade admits in his Affidavit that "I do not have personal knowledge of the deliberations of the Executive Committee, and I do not state that Judge Seeborg proposed or directed the reassignment." Civil Case, ECF No. 61-3 at ¶12. Nor does he explain how an administrative reassignment shows bias against him.

The same is true of Andrade's reliance on Judge Seeborg's purported decision to assign two additional cases, *United States v. Dillman*, No. 3:23-cr-00140-RS, and *United States v. Mata*, No. 3:22-cr-00171-RS, from Judge Donato to himself, after previously ruling in August 2023 that the Criminal Case was not related to those two prosecutions. Mot. at 13 (citing Criminal Case, ECF Nos. 199, 200). Andrade's recitation of procedural history is not entirely correct. Judge Seeborg had deemed *United States v. Mata*, No. 3:22-cr-00171-RS, to be related on May 13, 2022, and the *Mata* prosecution was reassigned from Judge Chen to Judge Seeborg at that time. Criminal Case, ECF No. 87. While Judge Seeborg initially determined that *Dillman* was not related to Andrade's Criminal Case, he later determined on October 28, 2025, that *Dillman* was related to *Mata*, following a sua sponte referral from Judge Donato. *United States v. Dillman*, No. 3:23-cr-00140-RS, ECF No. 66. More importantly, Andrade offers no explanation for how a determination that these cases are related could reflect bias or prejudice against him.

Considered collectively, the events that Andrade has identified do not stem from an "extrajudicial" source and therefore cannot constitute grounds for recusal.

## V. CONCLUSION

For the reasons explained above, the Court should deny Andrade's motion to disqualify under 28 U.S.C. § 144 and 28 U.S.C. § 455.

DATED: October 16, 2026

Respectfully Submitted,

/s/ *Michelle Lo*
MICHELLE LO
Counsel for Plaintiff
U.S. Securities and Exchange Commission