United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NAC FOUNDATION, LLC, et al.,

Defendants.

Case No. 20-cv-04188-RS (WHO)

**ORDER DENYING MOTION TO DISQUALIFY**

Re: Dkt. No. 61

Defendant Rowland Marcus Andrade moves to disqualify the Honorable Richard G. Seeborg from continuing to preside over this case, based chiefly on statements and rulings Judge Seeborg made while presiding over Andrade's related criminal and forfeiture cases. That motion was referred to me. Andrade's motion is untimely. But even when considered on the merits, Judge Seeborg has not shown either such deep-seated favoritism or antagonism that would make fair judgment on factual disputes in this action impossible or some other extrajudicial source of bias or prejudice that would make disqualification appropriate. For the reasons set forth below, Andrade's motion is DENIED.

**BACKGROUND**

This case began on June 25, 2020, when the U.S. Securities and Exchange Commission ("SEC") filed its complaint alleging that the NAC Foundation, LLC (NAC), and its founder and CEO, Andrade, had violated federal securities laws through the fraudulent and unregistered offer and sale of crypto assets. Civil Case, Dkt. No. 1.[1] Three days earlier, on June 22, 2020, the

[1] This Order will refer to this case as the "Civil Case" when citing to documents in this case, *SEC v. NAC Found., LLC*, No. 20-CV-04188-RS (N.D. Cal. filed June 25, 2020), the "Criminal Case" when citing to documents in the related criminal case, *United States v. Andrade*, No. 20-CR-00249-RS (N.D. Cal. filed June 20, 2022), and the "Forfeiture Case" when citing to documents in

United States District Court
Northern District of California

United States had filed an indictment charging Andrade with wire fraud and money laundering based on the same conduct. Criminal Case, Dkt. No. 1.[2]

The same day that it initiated this action, the SEC also filed a notice indicating that Andrade's criminal case may be related to two other cases: (1) a forfeiture case involving property purchased using the proceeds of funds derived from the same wire fraud and money laundering scheme; and (2) a criminal case charging Jack Abramoff with conspiracy to commit wire fraud and naming Andrade as a co-conspirator. Criminal Case, Dkt. No. 5. The Executive Committee for the Northern District of California then issued an order reassigning those two cases to Judge Seeborg "in the interests of justice and judicial economy." Forfeiture Case, Dkt. No. 40.

To date, this case remains stayed. On January 21, 2021, Judge Seeborg entered an order staying all proceedings pending resolution of the criminal case. Civil Case, Dkt. No. 29. On March 12, 2025, a jury found Andrade guilty of wire fraud and money laundering. Criminal Case, Dkt. No. 615. Judge Seeborg extended the stay until 60 days after resolution of restitution in the criminal proceeding. Civil Case, Dkt. No. 47. At the parties' request, Judge Seeborg granted three more extensions of the stay. Civil Case, Dkt. Nos. 51, 53, 55. On July 13, 2026, the SEC requested that the Court lift the stay, but defense counsel reported difficulty communicating with Andrade due to his custodial status and requested an extension of the stay. Civil Case, Dkt. No. 56. Judge Seeborg entered an order extending the stay until October 12, 2026. Civil Case, Dkt. No. 58.

On October 2, 2026, before the stay was set to expire, Andrade filed the instant motion to disqualify Judge Seeborg.[3] Civil Case, Dkt. No. 61. Judge Seeborg referred the motion for

---

the related forfeiture case, *United States v. One Parcel of Real Estate Prop.*, No. 20-CV-02013-RS (N.D. Cal. filed Mar. 23, 2020).

[2] Andrade requests that I take judicial notice of records in the Criminal Case. Dkt. No. 68-8. A court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); Fed. R. Evid. 201(b). Accordingly, his request is GRANTED.

[3] On October 14, 2026, Andrade filed a motion to correct his motion to disqualify, styled as a notice of errata. Dkt. No. 64. That motion seeks to fix an incorrect docket citation in his motion to disqualify. It is GRANTED.

reassignment to another judge, and the motion was reassigned to me.[4] Civil Case, Dkt. No. 62.

## LEGAL STANDARD

Motions to disqualify fall under two statutory provisions, 28 U.S.C. § 144 and 28 U.S.C. § 455. Section 144 provides for recusal where a party files a timely and sufficient affidavit averring that the judge before whom the matter is pending has a personal bias or prejudice either against the party or in favor of an adverse party and setting forth the facts and reasons for such belief. *See* 28 U.S.C. § 144. Similarly, section 455 requires a judge to disqualify himself "in any proceeding in which [his] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), including where the judge "has a personal bias or prejudice concerning a party." *Id.* § 455(b)(1). The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: "[w]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (internal quotations and citation omitted). The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

## DISCUSSION

Andrade moves for recusal under section 144 and section 455(a). In opposition, the SEC argues that his motion is both untimely and without merit. I address the timeliness and merits of his motion in turn.

### I. Timeliness

Under section 144, reassignment is required only if there is a "timely and sufficient affidavit," as determined by the judge to whom the motion is directed. *Nat'l Abortion Fed'n v. Ctr. For Med. Progress*, 257 F. Supp. 3d 1084, 1088 (N.D. Cal. 2017), *aff'd*, No. 21-15953, 2022 WL 3572943 (9th Cir. Aug. 19, 2022). Section 144 expressly requires that the motion be "timely," 28 U.S.C. § 144, and it is "well established" that a motion brought under section 455 "must be made in a timely fashion." *Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1116 (N.D. Cal.

[4] Pursuant to Civil Local Rule 7-1(b), I find that this motion is suitable for disposition without oral argument.

2025). The purpose of this requirement is to "avoid the risk that litigants will use recusal motions for 'strategic purposes.'" *Id.* (citation omitted); *see also Al-Mansur v. County of Alameda*, No. 24-CV-06909-AMO, 2025 WL 1642858, at *1 (N.D. Cal. May 30, 2025) (explaining that a party with information of a potential ground for disqualification cannot wait until after an unfavorable judgment to bring that information to the court's attention). Even where, as here, the assigned judge has referred the motion to another judge, timeliness is still a threshold issue. *See id.* (indicating that motion to disqualify could be terminated on untimeliness alone before addressing merits); *United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997) (explaining that timeliness is required under both sections 144 and 455 in the Ninth Circuit).

Andrade asserts that his motion is timely because it is supported by a pattern of events that only concluded with Judge Seeborg's March 11, 2026 Order. *See* Mot. at 9; Affidavit of Rowland Marcus Andrade ("Andrade Decl.") [Dkt. No. 61-3] ¶¶ 41, 46. Setting aside the substance of those events and whether they warrant recusal, Andrade did not file his motion "with reasonable promptness" after ascertaining the ground for his motion. *Al-Mansur*, 2025 WL 1642858, at *1. He waited nearly seven months after the March 11, 2026 Order to file his motion. Courts have found comparable delays to be unreasonable. *See, e.g.*, *id.* at *2 (five-month delay rendered motion untimely); *United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018) (month-long delay rendered motion untimely); *S.E.C. v. Bowin*, 60 F. App'x 151, 152 (9th Cir. 2003) (two-month delay rendered motion untimely).

"[A] delay in bringing a motion to disqualify may only be excused for good cause." *Rogers*, 119 F.3d at 1382. Andrade argues that good cause exists for the delay for two main reasons. First, he contends that because the action has been stayed, his belated motion cannot be a "reaction to an adverse ruling" and that he filed at "the earliest practical moment . . . before proceedings resume." Mot. at 9–10. Second, he alludes to difficulties in privileged communications with his counsel while he has been in federal custody. *Id.* at 10. Neither ground is persuasive. Andrade does not explain why the present motion could not have been filed at any of the earlier junctures when he sought a stay. *See* Civil Case, Dkt. Nos. 54, 56. And though he argues that his communication challenges with counsel show good cause for any delay in filing, he

has engaged in other case-related activity before seeking recusal, including moving for reconsideration and pursuing an appeal. *See* Criminal Case, Dkt. Nos. 830, 833. The fact that he filed the present motion "only after engaging in such a wide range of other activity – and facing rejections of certain requests – suggests that [he] only pursues this relief in order to get a second bite at the apple." *Al-Mansur*, 2025 WL 1642858, at *2 (internal quotations and citation omitted) (finding motion untimely where movant filed motions and pursued an appeal before seeking recusal).

I find that Andrade's motion is untimely. While the motion's untimeliness is sufficient on its own to warrant denial, I will consider the merits "in the interest of completeness and clarity." *Nat'l Abortion Fed'n*, 257 F. Supp. 3d at 1088.

**II. Merits**

Andrade seeks disqualification on two bases. First, he argues that because this case will involve overlapping factual disputes with the criminal case and Judge Seeborg made certain conclusions in the criminal case, a reasonable observer would question Judge Seeborg's ability to weigh the evidence on its merits. Second, he asserts that a sequence of events in the Civil Case, Criminal Case, and Forfeiture Case show that Judge Seeborg harbors favoritism toward the government.

**A. Overlap Between Civil Case and Criminal Case**

Andrade argues that the overlap of factual disputes on which Judge Seeborg "announced conclusions . . . in the criminal case" would cause an observer to "perceive a significant risk that those conclusions will govern this case before its evidence is heard." Mot. at 2–3. He expresses concern that Judge Seeborg will apply "the same conclusions . . . without a fresh hearing on a civil record." Reply at 6.

As an initial matter, Judge Seeborg's remarks from the Criminal Case are not a valid basis for recusal. Motions are recusal are limited by the "extrajudicial source" factor, which requires the basis for recusal to be "something other than rulings, opinions formed[,] or statements made by the judge during the course of trial." *Holland*, 519 F.3d at 913–14. Critical, disapproving, or even hostile judicial remarks made during the course of a trial do not ordinarily support a bias or



United States District Court
Northern District of California

partiality challenge. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Such remarks may warrant recusal "if they reveal an opinion that derives from an extrajudicial source" and will do so "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555. But a "judge's ordinary efforts at courtroom administration . . . remain immune," including "expressions of impatience, dissatisfaction, annoyance, and even anger." *Id.* at 555–56.

On reply, Andrade presents a litany of remarks Judge Seeborg made in hearings and written orders as conclusions that would control the civil action. *See* Reply at 3–6. But none of those remarks reflect "the extrajudicial bias or partiality necessary for a reasonable, well-informed observer to find that [he] would resolve the case on a basis other than the merits." *Al-Mansur*, 2025 WL 1642858, at *3 (internal quotations and citation omitted). Judge Seeborg's comments at sentencing do not reflect bias against Andrade, but rather, the consideration of the nature and circumstances of the offense at issue required by 18 U.S.C. § 3553(a). Judge Seeborg's statements at a post-trial hearing about Andrade lying to investors merely characterize the government's case and a conclusion that the jury had reached. His statement that certain "technology evidence" was irrelevant at sentencing likewise fails to show bias against Andrade. Reply at 5–6. Finally, Judge Seeborg's formal written order denying Andrade's motion for a new trial is a ruling that does not show bias or favoritism, even if Andrade disagrees with the outcome. "It is well settled that an adverse ruling, standing alone, is an insufficient basis for recusal." *Braik v. Sw. Airlines Co.*, No. 25-CV-08629-VKD, 2025 WL 2998162, at *2 (N.D. Cal. Oct. 24, 2025). In short, none of these remarks reflect the sort of bias or prejudice that would call Judge Seeborg's impartiality in this case into question.

Andrade also contends that Judge Seeborg's rulings on evidence related to Abramoff, which Judge Seeborg characterized as irrelevant and unexplained, create a significant risk that he will apply the same conclusions in this action. Reply at 6–15. Specifically, he takes issue with orders stating that the defense had not explained why it needed access to documents concerning Abramoff and denying Andrade's motions for an evidentiary hearing, reconsideration, and a new trial. *Id.* at 7–14. But nowhere does he explain how such orders or rulings display deep-seated

favoritism or antagonism that would make fair judgment on factual disputes in this action impossible. Rather, like judicial remarks, judicial rulings "almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555.

Andrade's reliance on the concurrence in *King v. United States District Court for the Central District of California*, 16 F.3d 992 (9th Cir. 1994) is not persuasive. There, Judge Reinhardt thought the judge's impartiality might reasonably be questioned because he "formed his views of the issues in a case in which" the petitioner was not a party. *Id.* at 995 (Reinhardt, J., concurring). But he made clear that such a case was distinguishable from one "in which the same parties litigate the same issue in two different trials," which Andrade contends is the case here. *Id.*

Ultimately, the overlap in issues is exactly why the cases were related. A judge who presides at a trial is not automatically rendered recusable for bias or prejudice in successive proceedings. *See Liteky*, 510 U.S. at 551. To the contrary, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Id.* The same reasoning is embodied in this District's local rules, which provide for the relation of cases where they "concern substantially the same parties, property, transaction, or event," and relation would likely avoid "an unduly burdensome duplication of labor and expense or conflicting results." Civ. L.R. 3-12(a); *see also* Crim. L.R. 8-1(b). In short, the overlap is a reason to keep the cases before the same judge, not a reason to disqualify that judge.

Finally, Andrade cites no authority for the premise that the evidence in this case must receive "a fresh hearing." Reply at 6. The disqualification inquiry is focused on whether the party will receive a fair judgment on the merits, not whether the party gets another bite at the apple to contest an adverse ruling. *See Liteky*, 510 U.S. at 549, 555. To the extent issues already decided in the Criminal Case arise in this case, the doctrine of collateral estoppel may prevent the parties from relitigating them here. *See Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). A desire to relitigate settled issues is not a ground for recusal.

**B. Sequence of Events in Civil Case, Criminal Case, and Forfeiture Case**

Andrade also presents a series of events occurring in the Civil Case, Criminal Case, and

Forfeiture Case that, "accepted as true and read together," permit an inference of "deep-seated favoritism" toward the government. *See* Mot. at 11–13. But as explained below, each of these events occurred during judicial proceedings and so cannot support recusal absent either a reflection of deep-seated favoritism or antagonism that would make fair judgment impossible or an extrajudicial source of bias or prejudice.

Two of the events Andrade references concern the reassignment of cases: (1) the reassignment of the Forfeiture Case and the Abramoff prosecution to Judge Seeborg by the Executive Committee in June 2020 and (2) the reassignment of two related prosecutions to Judge Seeborg in October 2025. Mot. at 11, 13. He does not explain any of these reassignments could reflect bias or prejudice by Judge Seeborg. The earlier reassignment was made by the Executive Committee, not Judge Seeborg. Forfeiture Case, Dkt. No. 40. And Andrade admits that the later reassignment is consistent with this District's Local Rules. *See* Reply at 20.

The remainder of the events upon which Andrade relies constitute judicial rulings and remarks that, as explained above, do not support disqualification under the "extrajudicial source" factor. Two of the events – a court order stating that the defense had not explained why it needed access to protected materials and statements in a hearing characterizing Andrade lying to investors as the "centerpiece" of the government's case – are, as discussed above, judicial rulings and remarks that do not comprise a basis for disqualification. *See* Mot. at 12–13. Andrade also cites to Judge Seeborg's curtailing of an inquiry into Abramoff's activities, exclusion of related documentary evidence, denial of an instruction for insufficient evidence, finding of no "spillover" between Andrade's conduct and Abramoff's conduct, and remarks to the prosecution to "protect the record." *Id.* Again, these are all judicial rulings or remarks that, even if adverse to Andrade, are not proper grounds for recusal. *See Liteky*, 510 U.S. at 555.

Andrade concedes that none of these events alone warrants recusal. Mot. at 13. Instead, he rests his motion on the cumulative nature of these events. *See id.* at 8. As explained above, none of the events shows bias or partiality on its own. Because no individual event supports disqualification, the "cumulative effect" of these events does not either. *Nat'l Abortion Fed'n*, 257 F. Supp. 3d at 1092.

United States District Court
Northern District of California

**CONCLUSION**

Andrade has not sufficiently demonstrated that Judge Seeborg should be disqualified, nor has he provided any reason to question his impartiality. Accordingly, Andrade's motion to disqualify Judge Seeborg is DENIED.

**IT IS SO ORDERED.**

Dated: November 18, 2026



William H. Orrick
United States District Judge